**UNITED STATES of America,**
**Appellee.**

v.

**Frank BORDA, Appellant.**

**No. 8163.**

United States Court of Appeals
Fourth Circuit.

Argued Nov. 16, 1960.

Decided Jan. 4, 1961.

Sam R. Watt, Spartanburg, S. C., for appellant.

Joseph E. Hines, U. S. Atty., Spartanburg, S. C. (James D. Jefferies, Asst. U. S. Atty., Columbia, S. C., on brief), for appellee.

Before SOPER and HAYNSWORTH, Circuit Judges, and HARRY E. WATKINS, District Judge.

HAYNSWORTH, Circuit Judge.

On this appeal, the defendant, Frank Borda, convicted of a violation of the Dwyer Act,[1] contends the evidence was insufficient to support the verdict. We think the verdict is supported by the evi-

---

1. 18 U.S.C.A. § 2312.

**406**

dence, and we affirm denial of the motion for judgment of acquittal.

Chestnut Motor Company, of Philadelphia, furnished to one of its salesmen, Dever, a 1958 Ford station wagon. On the evening of November 29, 1957, Dever was driving this vehicle to his home in New Jersey when he ran out of gasoline. He left the station wagon parked on a side street and returned the next evening to find that it was gone.

On November 30, 1957, Carl Clary, a used car dealer of Spartanburg County, South Carolina, and John Solesbee, who worked with, or for, Clary, went to a drive-in restaurant, in Spartanburg, in response to a telephone call to Solesbee from one, Allen F. Kayfield. Solesbee had been buying cars in the Philadelphia area and had dealt there with Kayfield, whose visit to Spartanburg was expected. When Clary and Solesbee arrived at the restaurant, they found the defendant, Borda, standing beside a 1958 Ford station wagon, which the proof has shown to be the same vehicle furnished for the use of Dever by his employer in Philadelphia, and which had been removed from the street some time after it was left there by Dever on the evening of November 29. Kayfield then came out of the restaurant and the four men entered the Ford station wagon, where they proceeded to negotiate for the sale of that vehicle and a 1957 Plymouth.

The testimony shows that the negotiations on behalf of the sellers were conducted, principally, by the defendant, Borda. He wanted $2,500 for the two automobiles. After some time, he declared he would not take less than $2,000 for the two, but finally agreed to accept $1500 in cash upon Clary's insistence that he had no more than that. During the discussion, however, Borda spoke angrily about the sum of $300 due by Solesbee to Kayfield in connection with a previous transaction. Borda conditioned the sale of the two vehicles upon a promise that the $300 sum would be paid "up there" on the following Monday.

$1,500 in cash was then delivered to Kayfield, who proceeded to make out bills of sale in his name. The defendant then suggested that they did not have the titles to the automobiles, and that they would postdate the bills of sale by four days.

When the transaction was concluded, Clary drove Borda and Kayfield to the airport.

Dever was called as a witness at the trial to establish ownership of the Ford station wagon and the fact that it was stolen. Among other things, he testified that on the evening preceding his testimony he had a general conversation with Borda in the lobby of a hotel in Spartanburg, where Borda and Dever were both stopping. Borda had visited the place of business of Dever's employer in Philadelphia and the two were acquainted. Dever testified that on the morning upon which he took the witness stand, Borda came by the room in the hotel occupied by Dever and Mrs. Dever. According to Dever, in this conversation Borda sought to persuade Dever to testify that Dever had given Kayfield permission to drive the station wagon. Borda claimed that he had seen Dever outside his apartment on the night of November 29, 1957, and that Dever was drunk. Dever admitted that he had had some drinks, but denied that he was drunk. He was then told by Borda to say that he had had ten drinks.

The only testimony offered on behalf of the defense was a record of Kayfield's conviction upon a plea of guilty to Dwyer Act charges based upon the transportation of the same Ford station wagon.

The defendant's contention is founded, principally, upon the Kayfield conviction. Borda reasons that that conviction establishes the fact that Kayfield effected the transportation of the station wagon knowing it to have been stolen, and that the testimony shows no connection between Borda and the vehicle, except a gratuitous assistance to his friend, Kayfield, in effecting a sale of it in Spartanburg. The testimony, however, clearly warrants broader inferences.

The Kayfield conviction, at the most, is evidence that Kayfield participated in the transportation with knowledge that the vehicle was stolen. There is nothing in the fact of that conviction which precludes the inference that Borda and Kayfield acted jointly, and that Borda as well as Kayfield participated in the transportation and with the same knowledge. Indeed, the testimony shows that Borda was the chief negotiator, suggesting that he was the principal and Kayfield his accomplice. While the purchase price was immediately delivered into the hands of Kayfield and there is no testimony as to whether all or any part of this cash was actually transferred by Kayfield to Borda, it was Borda who agreed upon the purchase price and it was he who angrily insisted that Solesbee's pre-existing debt to Kayfield be settled promptly. Certainly, the jury was warranted in concluding that Borda's participation in the transaction was much more than that of an acquaintance of Kayfield's who simply happened upon the scene as Kayfield was about to negotiate the sale of vehicles which Kayfield had transported.

 In considering the sufficiency of the evidence, we are required to take it in the light most favorable to the verdict.[2] Viewing the evidence in this light, we think it plain the jury was warranted in concluding that Borda exercised dominion over the station wagon and that its possession was not exclusively Kayfield's, but, at least in part, Borda's. The fact of possession in South Carolina of a vehicle so recently stolen in New Jersey would support an inference that the possessor was guilty of the theft and participated in the removal of the stolen goods.[3] Such inferences which may be drawn from proof of the bare fact of possession are further supported here by the testimony which places Borda in the Philadelphia area, where the theft was committed, and by the evidence that Borda made an effort to induce Dever to falsify his testimony, that he accepted a price which was substantially less than the testimony shows the real value of the automobiles to have been, and that he did not have titles to the vehicles. Borda's reliance upon cases in which the testimony was insufficient to establish the defendant's possession of the stolen goods is misplaced, for here the evidence, viewed as it now must be, establishes Borda's exercise of dominion and control over the vehicle.

We conclude the verdict is amply supported by the evidence, and that the motion for judgment of acquittal was properly denied.

 Borda also complains of the Court's charge to the jury. Though the court clearly charged that knowledge that the vehicle was stolen was an essential element of the offense, the charge was concluded by a statement, in effect, that the only question for the jury was whether or not Borda transported the vehicle, or assisted or participated in its transportation. The complaint is that in the concluding paragraph of the charge there was no direct reference to the essential requirement of knowledge of the theft.

Viewed as a whole, the charge is correct. The fact that the elements of the offense were separately discussed could not have misled the jury. Perhaps it would have been better if the Court, in the concluding statement, had tied together all of the elements of the offense. It doubtless would have done so had the defendant made such a request at the time, or entered an objection to the charge that the element of knowledge had been insufficiently emphasized in the concluding portion of the charge. There was no such objection to the charge at the time, however, and this objection to a charge, which was correct when viewed as a whole, may not now be raised.[4]

2. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; Crawley v. United States, 4 Cir., 268 F.2d 808; Bell v. United States, 4 Cir., 185 F.2d 302.

3. Battaglia v. United States, 4 Cir., 205 F.2d 824.

4. Rule 30, Federal Rules of Criminal Procedure, 18 U.S.C.A.

Finally, the defendant complains of remarks by the prosecutor in his argument to the jury. These remarks related to collateral matters and we think were unprejudicial. We do not express approval of all the prosecutor had to say, or the manner in which it was said, but every slight excess does not require that a jury's verdict be overturned and a new trial awarded. This is particularly true where the excess is called to the prosecutor's attention and he promptly confesses his error and apologizes, as the District Attorney did here after inviting the jury to look at the defendant with the apparent purpose of suggesting that his appearance proved that he had no legitimate purpose to serve in Spartanburg.

Principal objection is directed to the prosecutor's statement that there was no denial of Dever's testimony about his conversation in his hotel room with Borda. Borda's contention is that it amounted to a comment upon Borda's failure to testify in his own behalf, since the only persons present, according to Dever, were Dever, Borda and Mrs. Dever. He invokes the rule of Langford v. United States, 9 Cir., 178 F.2d 48. Here, however, it is not apparent that Dever's testimony could be contradicted by no one other than the defendant. If the defendant did not go to Dever's hotel room and engage in a conversation with him, it is not unlikely that he could have produced witnesses to his presence elsewhere at the time Dever said he was in Dever's room. If Borda did go to Dever's room and engage in conversation with him, at least Mrs. Dever was present, and, presumably, would have testified truthfully to her recollection of the conversation had Borda wished to call her as a witness. In his charge to the jury the Court stated that the failure of the defendant to testify "can't be used against him," and that the jury "must not permit that fact to weigh in the slightest degree against him, the defendant, nor should this fact enter into the discussion or deliberation of the jury in any manner." We find no reason to suppose that the jury understood the prosecutor's remarks to be a direct reference to defendant's failure to testify.

We have examined the record and find no error affecting substantial rights of the defendant.

Affirmed.