UNITED STATES of America, Appellee,

v.

**John B. MUMFORD, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Cortes W. RANDELL, Appellant.**

**Nos. 79–5087, 79–5088.**

United States Court of Appeals,
Fourth Circuit.

Argued Aug. 13, 1980.

Decided Oct. 2, 1980.

A. Raymond Randolph, Jr., Washington, D. C. (V. Thomas Lankford, Jr., Richard A. Kaplan, Sharp, Randolph & Green, Washington, D. C., on brief), for appellant in 79–5088.

David S. Cupps, Columbus, Ohio (Joseph D. Lonardo, Vorys, Sater, Seymour & Pease, Columbus, Ohio, Gregory L. Murphy, Murphy, McGettigan, McNally & West, Alexandria, Va., on brief), for appellant in 79–5087.

Caroline Heck, Dept. of Justice (Morris B. Silverstein, William C. Bryson, Dept. of Justice, Washington, D. C., Justin W. Williams, U. S. Atty., Theodore S. Greenberg, Asst. U. S. Atty., Alexandria, Va., on brief), for appellee.

Before FIELD, Senior Circuit Judge, and HALL and SPROUSE, Circuit Judges.

K. K. HALL, Circuit Judge:

John Mumford and Cortes Randell were convicted by a jury on seven counts of mail fraud in violation of 18 U.S.C. § 1341; five counts of securities fraud in violation of 15 U.S.C. §§ 77q(a) and 77x; four counts of interstate transportation of securities and money obtained by fraud in violation of 18 U.S.C. § 2314; and on one count of submitting a false statement to a United States agency in violation of 18 U.S.C. § 1001. Mumford was sentenced to three years' imprisonment on the false statement conviction, with all but six months of the term suspended, and to five years' concurrent probation on all 17 counts. Randell was sentenced to concurrent five–year terms for his conviction on four counts of mail fraud and to concurrent two–year terms for his conviction on three other mail fraud counts to run consecutively with the first sentence. From their convictions Mumford and Randell noted their respective appeals. Upon consideration of the briefs and after oral argument, we affirm their convictions.

I.

On October 5, 1978, Mumford and Randell were indicted by a federal grand jury for their alleged participation in a scheme to defraud investors and financial institutions.

The alleged scheme was founded on the appellants' involvement in two Virginia corporations, the National Commercial Credit Corporation (NCCC) and the Federal Mortgage Acceptance Corporation (FMAC). NCCC was originally formed as Potomac Valley Homes in 1966 for the purpose of dealing in the second mortgage business. It had become NCCC in the early part of 1973 when Randell was hired to strengthen it and to prepare it for public offering as he had done in the 1960's with the National Student Marketing Corporation.[1] Randell's wife, Joan, loaned NCCC $140,000 in 1973. This loan was collateralized by $205,000 worth of NCCC second mortgages. Through his wife's investments, Randell increased his control over NCCC's operations. The government charged that the appellants concealed the extent of Randell's control over and interest in NCCC from financial institutions and investors.

In early 1974 Randell hired Mumford as a vice–president and director of NCCC. As such Mumford was responsible for the administration of operations which included approving expenditures, signing checks, determining the movement and pledging of NCCC's second mortgage notes, regulating corporate policies and procedures, and dealing with financial institutions, investors and lawyers.

In July of 1974, FMAC was formed ostensibly for the purpose of purchasing second mortgage notes. The majority stockholder was Joan Randell. Mumford became president of both NCCC and FMAC in late July of 1974. The appellants were charged with using FMAC to obtain money from financial institutions by pledging as collateral second trust notes which were not sound. The government also alleged that FMAC,

---

1. Randell had been convicted of and served a prison sentence for securities fraud arising from his involvement with the National Student Marketing Corporation.

through the appellants' control, was used to usurp business opportunities to the detriment of NCCC investors and that FMAC sold second trust notes to NCCC which were not worth the selling price. FMAC was capitalized by the notes which had served as collateral for the NCCC loan from Joan Randell. These notes were listed as assets on the books of both FMAC and NCCC. Joan Randell called her $140,000 loan due on July 5, 1974, but NCCC continued to pay her $1600 a month in interest throughout 1974. As a further part of the scheme to defraud, Mumford and Randell allegedly concealed from investors and financial institutions the fact that Joan Randell had called her loan due. They were also accused of failing to minimize the financial loss which resulted when the collateral, the second trust notes which were then worth $280,000, were transferred to Joan Randell.

Financing for the NCCC and FMAC operations was obtained in primarily one or two ways. First, both corporations obtained loans by pledging as collateral second mortgage notes that were represented to be sound and current. The indictment charged that Randell and Mumford caused to be circulated false and misleading financial statements in order to obtain these loans and loan guarantees; that the appellants pledged delinquent and defaulted second trust notes to secure financing from various financial institutions; and that the appellants knowingly made false, fraudulent and incomplete representations to various financial institutions and to the Veterans Administration. The appellant Randell was also charged with scheming to divert and diverting loans obtained by FMAC to his personal account to be used for purposes unconnected with FMAC.

Second, NCCC also raised money from private investors. In 1971 NCCC made a bond offering of $300,000 for 10% bonds to be secured by collateral mortgages equal to 125% of the amount borrowed. The government alleged that Mumford and Randell did not segregate and maintain sufficient collateral to secure this bond offering, and that when an inspection of such collateral was requested, the appellants complied by assembling for inspection certain collateral which was already pledged.

In 1974 Mumford and Randell proposed a conversion offer which would exchange 12% unsecured corporate notes for the 10% secured bonds. Upon the advice of a NCCC attorney, a letter proposing the exchange was sent to the bond holders. In connection with the letter detailing the conversion offer, Mumford and Randell were charged with omitting certain material facts which made the statement misleading. Mumford and Randell met with some of the investors who were considering the exchange offer to assure them about the soundness of their investment. At this meeting at least one investor was told that NCCC was doing very well (when in fact it was not) and was given a financial statement of NCCC which had attached to it an unauthorized addendum.

In the fall of 1974, Mumford applied to the Metropolitan Mortgage Fund (MMF) for home financing, and to the Veterans Administration for a loan guarantee. On these applications Mumford indicated that he would not be using funds borrowed from other sources to purchase the home. The indictment charged that Mumford intended to use $20,000 that he had borrowed from Joan Randell which was secured by a $27,000 deed of trust note to FMAC.

On December 11, 1977, the Securities and Exchange Commission (SEC) filed a complaint for a permanent injunction and ancilliary relief naming Cortes Randell, John Mumford and others as defendants. The complaint alleged that the defendants had violated, were violating and were likely to continue to violate various securities laws. All of the defendants except Mumford consented to the entry of a permanent injunction and other equitable relief without admitting or denying the SEC charges. On February 24, 1978, the district court dismissed the SEC's request for injunctive relief against Mumford on the ground that the SEC had failed to prove that he had either violated or was likely to violate securities laws. The SEC appealed the dismiss-

al of its complaint to this court. We affirmed the judgment of the district court. *SEC v. Mumford*, 618 F.2d 104 (4th Cir. 1980).

## II.

John Mumford raises four issues on appeal.[2] Initially, Mumford contends that his earlier trial on the charges brought by the SEC barred his criminal trial on the ground of *res judicata* or collateral estoppel.

■ The appellant's *res judicata* argument raised in the context of this case presents a difficult issue which is not often confronted by the courts. Seldom does the government, having had an issue determined adversely to it in a civil action with the less demanding burden of proof, institute criminal proceedings on the same facts and issues against the same party. However, only one circuit has held it unfair to allow the government to try again in a criminal trial issues which were determined adversely to it in a prior civil action. *Dranow v. United States*, 307 F.2d 545 (8th Cir. 1962).[3]

■ The principal of *res judicata* dictates that there be an end to litigation. "[I]t rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations," *Commissioner v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948); however *res judicata* serves as a bar to a subsequent litigation only when the prior judgment was returned by a court of competent jurisdiction, when the prior judgment was a final judgment on the merits, when the same parties and their privies are involved in both suits, when the two

actions are based on the same issues and material facts and when the two proceedings present the same cause of action. *Id.* The SEC complaint was for prospective injunctive relief, an equitable action which is in many respects *sui generis*. This trial is a criminal action.[4] Since the two proceedings do not present the same cause of action, *res judicata* does not bar the criminal prosecution of Mumford.[5]

■ Unlike *res judicata*, the doctrine of collateral estoppel may be applicable when the first cause of action was civil and the second is criminal. *Yates v. United States*, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1956); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Collateral estoppel precludes the relitigation of issues actually litigated which were necessary to the outcome of the first action. 1B J. Moore, Federal Practice ¶ 0.405[1] (2d ed. 1974). Mumford argues that collateral estoppel bars relitigation of the question of his past criminal conduct since the order dismissing the SEC civil action stated that the evidence "falls short of that necessary to find that he [Mumford] had willfully violated any of the SEC laws." While the written order appears to resolve the issue of Mumford's willful violation of SEC laws adversely to the government, a review of portions of the transcript reveals that on numerous occasions the trial judge made it clear that the court did not intend to reach the merits of the charges relating to Mumford's past conduct. The civil trial focused solely on whether the requested injunctive relief should be granted. The only issue actually litigated in the SEC action was the likelihood that Mumford would engage in future

2. Randell joins in Mumford's appeal, except on the issue of severance.

3. In *Dranow*, the court held that where the object of both proceedings was punishment, there was no doubt that *res judicata* barred the second trial.

4. We recognize that a difference in remedies sought does not alone differentiate the underlying claims. *Williams v. Ward*, 556 F.2d 1143 (2d Cir. 1977); *Lambert v. Conrad*, 536 F.2d 1183 (7th Cir. 1976). However, the difference

between the present underlying claims with their differing elements and burdens of proof is so great that there exist two separate causes of action.

5. Randell's reliance on the prior SEC action for preclusive effect is misplaced since he was not a party to the SEC proceeding. Nor can Randell argue that the consent decree has any preclusive effect since there was not an adjudication of the issues.

SEC violations. Since the two proceedings addressed different issues, collateral estoppel does not apply. The district court properly denied the appellant's motion to dismiss the indictment.

■ Mumford argues that the district court erred in failing to dismiss the indictment because of alleged prosecutorial misconduct before the grand jury. The alleged misconduct stems from the appearance before the grand jury of a SEC attorney who had participated in the investigations which led to the SEC civil action. We find this argument to be without merit.

■ Mumford also contends that his motion for mistrial should have been granted because of the government's assertedly improper and prejudicial questions to a witness about his prior conviction for fraud. The record supports the government's contention that this questioning was a proper trial strategy designed to take the "sting" out of cross–examination. Furthermore, the jury was given a cautionary instruction which was sufficient to ensure the proper use of evidence. *United States v. Bobo*, 477 F.2d 974 (4th Cir. 1973).

■ Mumford's last ground for appeal relates to the district court's denial of his motion for severance. Since the original joinder was proper under Rule 8(b) of the Federal Rules of Criminal Procedure, we uphold the denial of the motion to sever since there is no showing that the trial judge abused his discretion.

### III.

■ In addition to joining in Mumford's appeal, Cortes Randell raises six issues of his own on appeal. First, he contends that the prosecution's conduct at trial in eliciting testimony from various witnesses was improper. A review of the record discloses that the instances of prosecutorial misconduct cited by Randell were isolated occurrences which drew swift rebukes from the trial judge in a lengthy and complicated trial. Furthermore, "every slight excess does not require that a jury's verdict be overturned and a new trial awarded." *United States v. Borda*, 285 F.2d 405, 408 (4th Cir. 1961).

■ Second, Randell assigns as error certain evidentiary rulings made during the trial regarding the admissibility of Randell's prior conviction for securities fraud as well as the propriety of propounding what Randell characterized as hypothetical questions to lay witnesses. We find that the trial judge did not abuse his discretion on either of these evidentiary rulings. *United States v. Mastrotaro*, 455 F.2d 802 (4th Cir. 1972).

Third, Randell contends that he was indicted and convicted for his failure to testify before the SEC and the federal grand jury.[6] Randell did not testify before either the grand jury or the SEC. He argues that the portion of the indictment which charged him with concealing the scheme to defraud constitutes a penalty on the exercise of his fifth amendment privilege against self–incrimination.

■ It is axiomatic that no person may be penalized for the exercise of a constitutional privilege. *Grunewald v. United States*, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957). The privilege against self–incrimination extends to grand jury and other governmental proceedings. *Hale v. Henkel*, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906). The indictment as originally returned did contain the words "federal grand jury;" however, these words were stricken prior to trial on the government's motion. It is argued that the deletion of these words constituted an amendment of the indictment which can not be done except by

---

**6.** Randell's argument centers on Count I, ' B2 x of the indictment as originally returned which charged:

It was further a part of the scheme and artifice to defraud that the defendants CORTES W. RANDELL and JOHN B. MUMFORD would and did conceal and cause to be concealed from investors, financial institutions, the State Corporation Commission of Virginia, the Veterans Administration, the United States Securities and Exchange Commission, and a federal grand jury, the scheme and artifice to defraud described above in Paragraphs 2(a) through (w) of this Count.

resubmission to the grand jury. *Russell v. United States,* 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). We find this argument to be unpersuasive. The deletion of the words "federal grand jury" only narrowed the charges against Randell; indeed, the deletion was favorable to Randell since no evidence was presented at trial on this charge. *United States v. Holt,* 529 F.2d 981 (4th Cir. 1975).

We must therefore decide whether that portion of the indictment which charged Randell with concealment from the SEC of the scheme to defraud amounted to a comment on his failure to come before the SEC. There is nothing in the record to support Randell's contention that he was penalized for failing to testify before the SEC. There is no indication that Randell was ever asked to appear before any representative of the SEC. However, the grand jury did hear testimony that established that Cortes Randell had spoken to Barbara Fisher, a former NCCC employee, about her pending meeting with a Securities and Exchange Commission attorney. There was other evidence which showed an attempt by Randell to persuade Ms. Fisher to be less than candid about NCCC's operations when she met with the SEC attorney. It is reasonable to assume that Randell's efforts at persuasion could be considered concealment or attempted concealment. It is also reasonable to assume that Randell was indicted for concealment from the SEC of the scheme to defraud because of his failure to include certain material facts in the conversion offer letter he and Mumford prepared and sent to investors. Randell's argument that the grand jury indicted him for concealment because he failed to testify before the SEC is, in our opinion, unsupported by the record and does not warrant the dismissal of the indictment. *United States v. West,* 549 F.2d 545 (8th Cir.), *cert. denied,* 430 U.S. 956, 97 S.Ct. 1601, 51 L.Ed.2d 806 (1977).[7]

The remaining points upon which Randell seeks reversal, that the trial judge erred in submitting a lengthy "speaking" indictment to the jury and that Randell's conviction as an aider or abettor cannot be sustained if Mumford's conviction is reversed, have been considered and found to be untenable.

Accordingly, we affirm the convictions of Mumford and Randell. The judgments of the district court are hereby

*AFFIRMED.*

[redacted]

7. Even if the grand jury had charged Randell with concealment because of his failure to testify before them or before the SEC, his conviction would not need to be reversed. Since Randell was sentenced to concurrent jail terms on the first five counts of mail fraud, under the concurrent sentence doctrine it would not be necessary to review the validity of his conviction on Count 1. *United States v. Truong Dinh Hung,* 629 F.2d 908 (4th Cir. 1980). There is no substantial possibility that Randell's conviction on Count 1 of the indictment will adversely affect his right to parole nor will it subject him to adverse collateral consequences. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *Close v. United States,* 450 F.2d 152 (4th Cir. 1971), *cert. denied,* 405 U.S. 1068, 92 S.Ct. 1513, 31 L.Ed.2d 799 (1972).