**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 24-4419**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

STEVEN CLARK LEFEMINE,

Defendant - Appellant.

_____

Appeal from the United States District Court for the District of South Carolina, at Columbia.  Joseph F. Anderson, Jr, Senior District Judge.  (3:23-cr-00117-JFA-1)

_____

Argued:  September 12, 2025                               Decided:  May 1, 2026

_____

Before KING, RUSHING, and BENJAMIN, Circuit Judges.

_____

Affirmed by published opinion.  Judge Benjamin wrote the opinion, in which Judge King joined.  Judge Rushing wrote a dissenting opinion.

_____

**ARGUED:**  James Arthur Brown, Jr., LAW OFFICES OF JIM BROWN, P.A., Beaufort, South Carolina, for Appellant.  Tommie DeWayne Pearson, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.  **ON BRIEF:**  Adair F. Boroughs, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

_____

DeANDREA GIST BENJAMIN, Circuit Judge:

In an anti-abortion protest, Steven Clark Lefemine blocked entry to a reproductive healthcare facility in Columbia, South Carolina. He was later charged with a violation of the Freedom of Access to Clinic Entrances Act (the "FACE Act"). Lefemine requested a jury trial. The district court denied his request, as it determined that the constitutional right to a jury trial did not attach to the charged offense. Lefemine was subsequently found guilty at his bench trial.

He now appeals to overturn his conviction. He contends that he was entitled to a jury trial because the indictment was not properly amended and that Congress intended for all FACE Act violators to have the right to a jury trial. We disagree on both fronts and uphold Lefemine's conviction.

I.

A.

In November 2022, Lefemine notified the City of Columbia police department ("CPD") that he planned to visit Planned Parenthood South Atlantic ("PPSA") to protest the provider's abortion services. PPSA provides reproductive healthcare services, including abortions. Lefemine stated that he was protesting PPSA's operations because he believes that life begins at conception, and abortions are murder.

After notifying CPD, Lefemine went to PPSA and blocked entry to the building by sitting at the front entryway. PPSA's manager asked him to move but Lefemine refused. The manager then told Lefemine that she would call the police. During this time,

2

individuals seeking PPSA services could not access care. CPD arrived on the scene around 15 minutes after the start of the incident and Lefemine was arrested without incident. Lefemine was subsequently charged with trespassing under South Carolina law.[1]

B.

In addition to the state law charge, a federal grand jury indicted Lefemine on one count of violating the FACE Act, 18 U.S.C. § 248.

The FACE Act prohibits the use of force or threat of force or physical obstruction to intentionally injure, intimidate, or interfere with individuals seeking to obtain or provide reproductive healthcare services, and people seeking to exercise their religious rights at a place of worship. *Id.* § 248(a).

The statute sets forth substantial criminal and civil penalties for violating the act. *Id.* § 248(b). For a first offense of [...], section 248(b)(1) authorizes a maximum sentence of one year imprisonment. *Id.* § 248(b)(1). But the act provides an exception to the § 248(b)(1) first-offense penalty for "an offense involving exclusively a nonviolent physical obstruction.[2] *Id.* § 248(b). Under this first time, nonviolent offense exception, which is outlined in § 248(b), the penalty is limited to a fine of not more than $10,000, imprisonment for not more than six months, or both. *Id.* § 248(b).

---

[1] Lefemine was found guilty of trespassing and sentenced to pay a $465 fine in March 2023. S.C. Code Ann. § 16-11-620 (2025).

[2] The statute defines "physical obstruction" as "rendering impassable ingress to or egress from a facility that provides reproductive health services or to or from a place of religious worship, or rendering passage to or from such a facility or place of religious worship unreasonably difficult or hazardous." 18 U.S.C. § 248(e)(4).

3

Lefemine was initially indicted under the conduct provision at § 248(a) and the penalty provision at § 248(b)(1), which carries a maximum sentence of one year of imprisonment. His indictment as originally returned read:

> On or about November 15, 2022, in the District of South Carolina, the defendant, STEVEN CLARK LEFEMINE, by physical obstruction, did intentionally intimidate and interfere with and attempt to intimidate and interfere with employees and patients of Planned Parenthood South Atlantic in Columbia, South Carolina from providing reproductive health services and patients of said clinic from obtaining reproductive health services in that the defendant, STEVEN CLARK LEFEMINE, did block the front doors, making it difficult for employees and patients to get around him to enter the clinic;
> In violation of Title 18, United States Code, Sections 248 (a)(1) and (b)(1).

J.A. 13.[3]

The Government subsequently filed an amended penalty sheet—an auxiliary document to the indictment that outlines the maximum penalties for an offense—that reduced the maximum potential penalty to six months prison time and/or a fine of up to $10,000.[4] At a later status conference, Lefemine's counsel acknowledged the revisions: "[W]e have expressly consented to the second amended penalty sheet already." J.A. 64. During the conference, the Government also moved to amend the indictment to "remove the paren one from the caption and the paren one in the last sentence of Count One in violation of Title 18, United States Code, Sections 24 8(a)(1) and (b) period." *Id*. Put simply, the Government changed all references in the indictment from '18 U.S.C.

---

[3] Citations to "J.A." refer to the joint appendix filed by the parties. The J.A. contains the record on appeal from the district court. Page numbers refer to the "J.A. #" pagination.

[4] The Government proffered two amended penalty sheets as the first sheet inaccurately listed the maximum fine as $5,000 instead of $10,000. The magistrate judge acknowledged receipt of both penalty sheets in its accompanying order.

248(b)(1)' to '18 U.S.C. 248(b).'  Lefemine objected to the motion, but only regarding any potential impacts to his ability to file future dispositive motions—not to the text of the amended indictment.  The magistrate judge granted the amendment.

Lefemine initially sought a jury trial before the magistrate judge.  However, the magistrate judge left the jury trial question for the district court to decide because Lefemine did not agree to have his case heard as a misdemeanor before the magistrate judge.  The district court denied Lefemine's request for a jury trial and set the case for a bench trial.  Lefemine was convicted of one violation of the FACE Act, resulting in a sentence of 60 days' imprisonment and a fine of $1,000.

Lefemine now appeals his conviction, arguing that he was entitled to a jury trial based on the original indictment and because Congress intended for all FACE Act cases to have a jury trial.[5]  We disagree.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

II.

---

[5] Lefemine also moved to file a pro se supplemental brief, ECF 31, and, later, an amended pro se supplemental brief, ECF 51.  The panel grants the motion as to the first pro se supplemental brief and denies the later-filed motion for an amended pro se supplemental brief.

Upon review, the majority finds no merit in the additional arguments raised in the supplemental brief.  To the extent Lefemine contests the continued wisdom of the FACE Act on non-statutory grounds, we are not at liberty to act as "[t]he Federal Judiciary does not have the power to excise, erase, alter, or otherwise strike down a statute."  *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 253 (2020) (Thomas, J., concurring).

We review judgments from a bench trial under a mixed standard: the court's factual findings are reviewed for clear error, and its legal conclusions are reviewed de novo. *FTC v. Ross*, 743 F.3d 886, 894 (4th Cir. 2014). The right to a jury trial is a question of law. *Pandazides v. Virginia Bd. of Educ.*, 13 F.3d 823, 827 (4th Cir. 1994).

## III.

The Sixth Amendment of the United States Constitution protects the right to a jury trial in criminal proceedings. *See* U.S. CONST. amend.VI. But this constitutional guarantee to a jury trial only applies to serious offenses. *See Blanton v. City of N. Las Vegas*, 489 U.S. 538, 541 (1989) ("It has long been settled that 'there is a category of petty crimes or offenses which is not subject to the Sixth Amendment jury trial provision' ") (quoting *Duncan v. Louisiana*, 391 U.S. 145, 159 (1968)). In determining whether an offense is serious or petty, courts must consider "the maximum penalty attached to the offense" and "place primary emphasis on the maximum prison term authorized." *Lewis v. United States*, 518 U.S. 322, 326 (1996). While other statutory penalties, like fines or probation, "may infringe on a defendant's freedom, the deprivation of liberty imposed by imprisonment makes that penalty the best indicator of whether the legislature considered an offense to be 'petty' or 'serious.' " *Id.* (citing *Blanton*, 489 U.S. at 542).

The Supreme Court has consistently held that any offense that carries a maximum term of incarceration of six months or less is presumptively 'petty.' *Id.*; *see also Codispoti v. Pennsylvania*, 418 U.S. 506, 512 (1974). To overcome this presumption, an accused must show that additional statutory penalties viewed together with the maximum

6

authorized prison term are "so severe that they clearly reflect a legislative determination that the offense in question is a 'serious' one." *Blanton*, 489 U.S. at 543; *see also Lewis*, 518 U.S. at 326–28 (holding that this is an objective assessment based on the statutory penalties and not the particular circumstances of the defendant). It is "rare" for a penalty to be so onerous as to puncture the presumption. *Blanton*, 489 US at 543.

Petty offenses are also defined by statute as Class B and C misdemeanors carrying a maximum penalty of six months, and a maximum fine of $5,000. *See* 18 U.S.C § 19. While courts consider the statutory penalty in defining the type of offense, there is "no talismanic significance" given to the statute. *See Muniz v. Hoffman*, 422 U.S. 454, 477 (1975) (declining to consider a crime serious based only on a fine that went over the then-statutory limit). "[T]he statutory definition does not determine whether an offense is 'petty' in the constitutional sense." *United States v. Soderna,* 82 F.3d 1370, 1379 (7th Cir. 1996) (noting that the fine upheld in *Muniz* exceeded the then-statutory limit by a factor of twenty).

## A.

Lefemine first argues that, on the face of the indictment, he was charged and stood trial for an offense carrying a maximum sentence of one year of imprisonment thus entitling him to a jury trial. He premises this argument on the fact that the Government did not formally file an amended indictment.

But not every change to an indictment requires resubmission to a grand jury. *See United States v. Holt*, 529 F.2d 981 (4th Cir.1975) ("An indictment is amended only when it is so altered as to charge a different offense from that found by the grand jury."). "An

7

indictment can be amended without further consideration by the grand jury when it is necessary to strike surplusage, or to correct the indictment's form, e.g., a misnomer, or a typographical error."[6]  *United States v. Whitfield*, 695 F.3d 288, 308 (4th Cir.2012) (cleaned up).   And amendments to fix little inaccuracies or errors do not require resubmission to a grand jury. *See United States v. Mumford*, 630 F.2d 1023, 1028–29 (4th Cir. 1980) (deleting the phrase "federal grand jury" from an indictment did not constitute an amendment that required resubmission to a grand jury as it reduced the charges against the defendant and more accurately reflected the government's evidence).

The amended indictment here did not require resubmission to the grand jury because it reflected the government's change to the penalty sheet.   The indictment was only amended to update all references from '248(b)(1)' to '248(b).'  *See* J.A. 66.  This change in form merely fixed an inaccuracy and ensured both charging documents conformed with each other. *Whitfield*, 695 F.3d at 308.  If the Government had not done so, the indictment would have inaccurately reflected a higher and no longer applicable penalty for Lefemine's charge.  *See Mumford*, 630 F.2d at 1028–29; *see also United States v. Matzkin*, 14 F.3d 1014, 1019 (4th Cir.1994) ("The sufficiency of an indictment should be determined by practical, as distinguished from purely technical, considerations.") (internal citations omitted).

---

[6] Further, Fed. R. Crim. P. 7(c)(2) provides that a citation error is harmless and not sufficient grounds to dismiss an indictment unless the defendant was misled to his prejudice.

What's more, Lefemine was on notice of the changes to both the penalty sheet and indictment. The government is required to amend an indictment to ensure notice and that the defendant is "inform[ed]. . . of the charges in order that he may prepare his defense." *United States v. Holt*, 529 F.2d 981, 983 (4th Cir. 1975). That burden was met here. During the status conference, Lefemine's counsel acknowledged that he was aware of the second amended penalty sheet, stating that "we have expressly consented to the second amended penalty sheet already." J.A. 64. The second amended penalty sheet outlined a maximum prison term of six months and a fine of up to $10,000. During the same status conference, the magistrate judge granted the Government's motion that updated the indictment. While Lefemine objected on separate grounds, he did not object to the text change even when asked directly by the court. *Id.* Lefemine's counsel on appeal concedes that these amendments took place. Oral Argument at 1:37:00, United States v. Lefemine, No. 24-4419 (4th Cir. argued Sep. 12, 2025), www.youtube.com/watch?v=Bl4T6V2IrjA. It would be "unsound" to allow Lefemine to " 'question the legal sufficiency or propereity [sic] of the Indictment when he did not make such objection but, in fact, consented to the amendment before he was in jeopardy.' " *Holt*, 529 F.2d at 983–84.[7]

---

[7] It is worth noting that a defendant is not likely prejudiced by changes that reduce—rather than increase—his maximum criminal penalty. *See United States v. Allmendinger*, 706 F.3d 330, 340 (4th Cir. 2013) ("Since the charges were narrowed rather than broadened, Allmendinger's constitutional rights were not abridged."); *United States v. Miller*, 471 U.S. 130, 144 (1985) (noting that the Supreme Court has "sustain[ed] convictions where courts had withdrawn or ignored independent and unnecessary allegations in the indictments"). While this is an unusual case as Lefemine seeks to increase his possible sentence while the Government seeks leniency, the principle still stands.

9

Lefemine points to trial testimony for support, arguing that the testimony referenced violence and thus implicated the one-year penalty. *See* Appellant's Br. (ECF No. 22) at 22–23[8] (hereinafter "Opening Br.") (counsel referencing bench trial testimony). But trial testimony cannot supplant the actual amendments made to his charging documents. The crux of any analysis on the constitutional right to a jury trial is on the "maximum authorized period of incarceration." *Blanton*, 489 U.S. at 542. Based on the amended indictment and penalty sheet, Lefemine was *actually* subject only to a maximum sentence of six months in jail and up to a $10,000 fine. *See United States v. McClain*, 517 F. App'x 144, 146–47 (4th Cir. 2013) (No. 12-4895) (finding that the defendant was on notice of the maximum statutory penalty where he was provided an indictment and penalty sheet). So even if some testimony at trial implicated the statutory one-year penalty, Lefemine's amended indictment and penalty sheet resolve any ambiguity; his maximum authorized period of incarceration could only have been six months in jail and up to a $10,000 fine.

Accordingly, we find that the Government properly amended the indictment and that Lefemine was charged and stood trial for an offense subject to a maximum penalty of six months' imprisonment and up to a $10,000 fine.

### B.

Lefemine alternatively argues that he was entitled to a jury trial because the maximum penalties under § 248(b)—six months' imprisonment and a $10,000 fine— exceed the statutory definition of a petty offense. *See* 18 U.S.C. § 19.

---

[8] Page numbers for citations to ECF documents utilize the page numbers in the red header on each document.

10

Lefemine's first time, nonviolent offense is presumptively petty because it only carried a maximum authorized prison sentence of six months. *See Blanton*, 489 U.S. at 543. Thus, the narrow issue before us is whether the $10,000 fine combined with the six-month sentence was so "severe" or "onerous" as to transform the offense into a serious one. *Id*. We hold that it does not.

Every circuit to consider this issue has held that the first time, nonviolent exception to the FACE Act does not require a jury trial.[9] *See United States v. Soderna*, 82 F.3d 1370, 1378–79 (7th Cir. 1996) (holding that a first-time, nonviolent violation of the FACE Act is not a serious offense); *United States v. Unterburger*, 97 F.3d 1413, 1415–16 (11th Cir. 1996) (relying on *Soderna* to hold the same); *United States v. Balint*, 201 F.3d 928, 936 (7th Cir. 2000) (declining to revisit *Soderna*); *United States v. Dugan*, 667 F.3d 84, 85–87 (2d Cir. 2011) (relying on *Soderna* to hold the same). On the maximum penalty, the *Soderna* court concluded that "it is apparent that even though the maximum fine is higher in the present [FACE Act] case than it was in *Blanton* it is not so much higher as to make clear that Congress considered a first-time blockade of an abortion clinic a serious offense." *Soderna*, 82 F.3d at 1378. And if that's not enough, courts have held that fines much higher

---

[9] Lefemine contends that we should weigh *United States v. Lucero*, a 1995 Kansas district court decision, over the other circuit decisions. 895 F. Supp. 1419 (D. Kan. 1995). *Lucero* is the only federal court to grant a jury trial for this exception because the court "err[ed] on the side of preserving the right to a jury trial" and concluded that the $10,000 fine made the exception serious as it exceeded the statutory definition. *Id.* at 1420. However, *Lucero* relied on a decision that predated the maximum penalty standard formalized in *Blanton* where the maximum authorized prison term is predominant in the serious or petty analysis. *Id.* (citing *United States v. McAlister*, 630 F.2d 772 (10th Cir. 1980)). Given this and other circuit decisions, we see no need to afford *Lucero* any weight.

11

than $10,000 still lack a "clear [c]ongressional determination" that the violation was a serious offense. *See, e.g.*, *United States v. Clavette,* 135 F.3d 1308, 1309–11 (9th Cir. 1998) (maximum penalty of six months' incarceration plus $25,000 fine for an Endangered Species Act violation does not require a jury trial).

Lefemine overlooks this breadth of circuit precedent and instead attempts to infer Congress' legislative intent by contending that Congress was aware of the exception and its significance when it allowed for a $10,000 fine. *See* Opening Br. at 24. But the *Soderna* court addressed this exact argument on legislative intent and concluded that there is no clear "text or history of the [FACE Act] that suggests that the drafters intended defendants to have a right to a jury trial." *Soderna*, 82 F.3d at 1377. The Eleventh Circuit in *Unterburger* and the Second Circuit in *Dugan* also found no error in the *Soderna* analysis and held that a bench trial was proper. *See Unterburger*, 97 F.3d at 1416; *Dugan*, 667 F.3d at 87. Lefemine does not identify any legislative history of the FACE Act or any other objective indicators that show Congress intended to make the exception serious. It is noteworthy that Congress created an exception with lesser penalties for first time, nonviolent offenders as it shows that Congress viewed the conduct as less serious than other potential violations of the FACE Act. *Clavette*, 135 F.3d at 1311 (noting that the higher penalties for other violations of the Endangered Species Act cut against labeling the particular offense serious). At bottom, the statutory definition alone does not carry any "talismanic significance" and something more must be offered to show that Congress intended to make all violations of the FACE Act so serious an offense as to trigger the right to a jury trial. *Muniz*, 422 U.S. at 477.

12

Accordingly, we join the Second, Seventh, and Eleventh Circuits in holding that the first time, nonviolent exception to the FACE Act does not require a jury trial. The district court properly conducted a bench trial.

IV.

For the above reasons, the judgment of the district court is

*AFFIRMED.*

13

RUSHING, Circuit Judge, dissenting:

The majority holds that Lefemine was not entitled to a jury trial because he was charged with only a non-violent, first-time FACE Act violation—a petty offense. I disagree. The indictment charged Lefemine with committing a *violent* FACE Act violation, which carries a penalty of up to one year of imprisonment. Even under the majority's rubric, that entitled him to a jury trial. Because Lefemine was denied a jury over his objection, I respectfully dissent.

The original indictment charged Lefemine as follows:

> On or about November 15, 2022, in the District of South Carolina, the defendant, STEVEN CLARK LEFEMINE, by physical obstruction, did intentionally intimidate and interfere with and attempt to intimidate and interfere with employees and patients of Planned Parenthood South Atlantic in Columbia, South Carolina from providing reproductive health services and patients of said clinic from obtaining reproductive health services in that the defendant, STEVEN CLARK LEFEMINE, did block the front doors, making it difficult for employees and patients to get around him to enter the clinic;
>
> In violation of Title 18, United States Code, Sections 248 (a)(1) and (b)(1).

J.A. 13. The Government later amended the indictment to change the statutory citation of "Section 248 . . . (b)(1)" to "Section 248 . . . (b)," as reflected on the district court's docket. No other changes were made. After the amendment, then, the indictment still charged that Lefemine "did intentionally intimidate" and "attempt to intimidate" employees and patients of the Columbia Planned Parenthood clinic. J.A. 13.

By charging intimidation, the indictment alleged a violent offense. The FACE Act defines "intimidate" as "to place a person in reasonable apprehension of bodily harm to

14

him- or herself or to another." 18 U.S.C. § 248(e)(3). Placing another person in apprehension of bodily harm necessarily involves the threat of physical force, which makes a crime violent. *Cf. United States v. McNeal*, 818 F.3d 141, 153 (4th Cir. 2016) (holding that bank robbery "by intimidation" requires the threatened use of physical force and thus constitutes a crime of violence). Because the indictment charged Lefemine with a violent FACE Act violation, he was subject to the penalties listed in 18 U.S.C. § 248(b)(1) for a first offense, which include a sentence of up to one year of imprisonment. He was therefore entitled to a jury trial. *See Baldwin v. New York*, 399 U.S. 66, 69 (1970).

Contrary to the majority's reasoning, the Government's decision to change a citation in the indictment from "Section 248 . . . (b)(1)" to "Section 248 . . . (b)" did not remove the intimidation charge and accompanying threat of a year in prison. As an initial matter, subsection 248(b) encompasses paragraphs (b)(1) and (b)(2), which provide specific penalties for first and subsequent violations. Below paragraph (b)(2), in flush language, subsection 248(b) goes on to state, "except that for an offense involving exclusively a nonviolent physical obstruction, the fine shall be not more than $10,000 and the length of imprisonment shall be not more than six months, or both, for the first offense." Standing alone, the citation to "Section 248 . . . (b)" can include the entire subsection.

More importantly, the citation does not stand alone in the indictment but must be read in tandem with the indictment's "statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Indeed, when it comes to determining what offense a defendant is charged with, an indictment's statutory citation takes a backseat to the facts alleged therein. *See, e.g., Enzor v. United States*, 262 F.2d 172, 174 (5th Cir.

15

1958) ("The statute on which an indictment is founded is to be determined from the facts charged in the indictment, and the facts pleaded may bring the offense within one statute, although another statute is referred to in the indictment."); *United States v. Hutcheson*, 312 U.S. 219, 229 (1941); *Williams v. United States*, 168 U.S. 382, 389 (1897); *United States v. Massuet*, 851 F.2d 111, 116 (4th Cir. 1988). The indictment charged that Lefemine "by physical obstruction, did intentionally intimidate and interfere with and attempt to intimidate and interfere with employees and patients" of the Columbia Planned Parenthood clinic. J.A. 13. Those alleged facts indisputably exposed Lefemine to a sentence of one year in prison. *See* 18 U.S.C. § 248(b).

The majority observes that the Government intended to seek no more than six months' imprisonment against Lefemine and that he was aware of the Government's intention before trial. But Lefemine wanted a jury trial, and the offense alleged in the indictment against him entitled him to one. The Government's amendment did not succeed in actually reducing Lefemine's maximum criminal penalty because the indictment continued to charge him with a violent offense, which was not eligible for the reduced penalty provision. The Government's intention not to seek the statutory maximum penalty in Lefemine's case could not alter his constitutional right to a jury trial for this charge. *See* U.S. Const. amend. VI.

Because Lefemine was charged with a violent FACE Act violation and, over his objection, was wrongly denied his constitutional right to a jury trial, I would vacate Lefemine's conviction.

16