Ralph W. PURCELL, Appellant,

v.

UNITED STATES, Appellee.

No. 91–51.

District of Columbia Court of Appeals.

Argued April 24, 1991.

Decided July 10, 1991.

Patricia D. Ricks, with whom Dovey J. Roundtree, Washington, D.C., was on the brief, for appellant.

Elizabeth H. Danello, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Thomas J. Hibarger, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before FERREN, TERRY, and WAGNER, Associate Judges.

TERRY, Associate Judge:

While driving his car through an intersection in northeast Washington, appellant Purcell struck and killed a pedestrian. A few weeks later the grand jury returned an indictment charging him with negligent homicide, a felony under D.C.Code § 40–713 (1990). Purcell moved to dismiss the indictment, contending that his previous prosecution for traffic offenses arising out of the same incident barred the instant prosecution on double

jeopardy grounds. The trial court, after a hearing, denied the motion. Purcell appeals;[1] we affirm.

I

■ On September 28, 1989, Purcell's car collided with a pedestrian at the intersection of Seventh and Monroe Streets, N.E. A police officer at the scene issued Purcell three citations for traffic law violations: failing to stop at a red light,[2] driving at an unreasonable speed,[3] and failing to yield the right of way to a pedestrian.[4] The Bureau of Traffic Adjudication (BTA) determined, after a hearing, that Purcell had passed a red light but had not traveled at an unreasonable speed. The charge of failing to yield the right of way to a pedestrian was not considered at the BTA hearing. However, some time before the hearing below on the motion to dismiss, Purcell paid the BTA a fine for that charge.[5] That payment was later returned to him by the BTA.

Purcell based his motion to dismiss the indictment on the theory that the hearing on the traffic citations had placed him in jeopardy, so that the Double Jeopardy Clause of the Fifth Amendment shielded him from prosecution on the indictment. The trial court ruled, however, that there

had been no prior jeopardy because Purcell had not previously been charged with a criminal offense. The court held that the red light and unreasonable speed charges were civil violations, that jeopardy therefore did not attach in the BTA hearing on those violations, and that the BTA never had jurisdiction to hear the criminal charge of failing to yield to a pedestrian. Thus, the court concluded, there was no double jeopardy bar to the prosecution of Purcell for negligent homicide.

II

■ The Double Jeopardy Clause protects a person convicted or acquitted of a crime from any subsequent prosecution for the same crime. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). A subsequent prosecution is for the same crime if the government, "to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Grady v. Corbin*, — U.S. ——, 110 S.Ct. 2084, 2093, 109 L.Ed.2d 548 (1990) (footnote omitted). Purcell claims that the Double Jeopardy Clause requires dismissal of the indictment charg-

1. A trial court's denial of a motion to dismiss an indictment on the ground of double jeopardy is immediately appealable. *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).

2. Failing to stop at a red light is a violation of 18 DCMR § 2103.7 (1987).

3. Driving at an unreasonable speed is a violation of 18 DCMR § 2200.3 (1987).

4. Failing to yield to a pedestrian is a violation of a traffic regulation, 18 DCMR § 2301.1 (1987). It is also a violation of a criminal statute, D.C.Code § 40–726 (1990), which authorizes the imprisonment of violators for up to thirty days, in addition to a fine of not more than $500. It is undisputed that only the Superior Court has jurisdiction to try charges brought under section 40–726.

Although the trial court assumed that Purcell was charged with a violation of the statute rather than the regulation, it is not clear that this assumption was correct. The police officer who issued the citation for failure to yield to a pedestrian checked a box on the ticket referring the charge to the Bureau of Traffic Adjudication

(BTA), rather than the Superior Court. The parties assume in their briefs that this was a mistake, but that is not certain, since the BTA does have jurisdiction to adjudicate violations of 18 DCMR § 2301.1. We need not resolve this uncertainty, however, because we conclude that the trial court's order must be affirmed regardless of whether he was charged under the regulation or the statute. If he was charged with violating the regulation, the double jeopardy analysis is the same as for the charges of passing a red light and speeding. See part III, *infra*. If he was charged under the statute, there is no double jeopardy bar to his prosecution for the reasons stated in part IV, *infra*.

5. The date of this payment is not entirely clear. At various points in the record it is represented that the payment was made on December 4, 1989; elsewhere, however, the date is given as December 4, 1990, less than two weeks before the hearing on the motion to dismiss the indictment. We assume that the latter date is correct, but for the purposes of this appeal it does not matter.

ing him with negligent homicide because the proceeding before the BTA was a prior prosecution for the "same crime." Relying on *Grady v. Corbin,* he argues that any trial for negligent homicide will necessarily entail proof of conduct for which he has already been prosecuted, namely, the three traffic offenses. We reject the argument because Purcell has not yet been prosecuted for any crime arising out of the events of September 28. What places this case beyond the reach of *Grady v. Corbin* is a 1978 statute, the Traffic Adjudication Act, which converted almost all District of Columbia traffic offenses from crimes to civil violations.

The Double Jeopardy Clause only prohibits successive *criminal* prosecutions or punishments for the same act. It does not bar a criminal prosecution after a proceeding that results in a civil sanction, or vice versa. *United States v. Ward,* 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980); *Helvering v. Mitchell,* 303 U.S. 391, 398–399, 58 S.Ct. 630, 632–633, 82 L.Ed. 917 (1938). The Supreme Court has made clear that a legislature "may impose both a criminal and a civil sanction in respect to the same act or omission; for the double jeopardy clause prohibits merely punishing twice, or attempting a second time to punish criminally, for the same offense." *Id.* at 399, 58 S.Ct. at 633. When the first proceeding is civil, no jeopardy attaches, and thus a later criminal prosecution does not raise any double jeopardy issues.

The defendant in *Helvering v. Mitchell* was initially charged with criminal tax fraud, under a section of the tax code which imposed a criminal penalty (five years' imprisonment or a $10,000 fine, or both) for willfully attempting to evade the payment of income tax. He went to trial and was acquitted. The Commissioner of Internal Revenue then brought a civil action, under a different section of the tax code, to recover the unpaid taxes as well as a civil penalty equal to fifty percent of the

unpaid amount. The defendant argued that the Double Jeopardy Clause barred the subsequent civil action because the civil penalty was really a criminal sanction intended to punish his allegedly criminal acts. The Supreme Court held, however, that there was no double jeopardy bar to the subsequent action unless the civil penalty was "intended as punishment, so that the [civil] proceeding is essentially criminal," *id.* at 398, 58 S.Ct. at 632–33, and that the question of whether a civil penalty is actually a criminal sanction "is one of statutory construction." *Id.* at 399, 58 S.Ct. at 633; *accord, e.g., One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 237, 93 S.Ct. 489, 493, 34 L.Ed.2d 438 (1972). The Court concluded that Congress had intended the civil penalty in that case to be a "remedial" or "civil administrative" sanction, so that jeopardy would not attach in the proceeding to recover the civil penalty. *Mitchell, supra,* 303 U.S. at 401, 406, 58 S.Ct. at 634, 636. "That Congress provided a distinctly civil procedure for the collection of the [penalty] indicates clearly that it intended a civil, not a criminal, sanction." *Id.* at 402, 58 S.Ct. at 634–35.[6]

Following the precedent established in *Mitchell,,* the Court in *United States v. Ward, supra,* outlined a two-step procedure for deciding whether a particular statutory penalty is civil or criminal. Starting from the basic rule that the issue "is a matter of statutory construction," the Court said that its first task was to ascertain whether the legislature "indicated either expressly or impliedly a preference for one label or the other." 448 U.S. at 248, 100 S.Ct. at 2641 (citations omitted). If the Court concludes that the legislature "has indicated an intention to establish a civil penalty," it must then determine whether the penalty is "so punitive either in purpose or effect as to negate that intention." *Id.* at 248–249, 100 S.Ct. at 2641 (citation omitted).

---

**6.** The Court deemed it significant that the tax code "contains two separate and distinct provisions imposing sanctions, and that these appear in different parts of the statute...." *Mitchell,* *supra,* 303 U.S. at 404, 58 S.Ct. at 635–36; *accord, One Lot Emerald Cut Stones v. United States, supra,* 409 U.S. at 236, 93 S.Ct. at 492–93.

## III

We adopt the two-part analysis prescribed in *Ward* to determine whether the BTA offenses [7] with which Purcell was charged were civil or criminal. *See $345.00 in United States Currency v. District of Columbia*, 544 A.2d 680, 682 (D.C.1988) ("apply[ing] the analysis set forth in ... *Ward* "). If the BTA offenses were civil rather than criminal, then jeopardy did not attach in the BTA proceedings, and the Double Jeopardy Clause does not bar the instant prosecution for negligent homicide.

### A

First, we must determine whether our legislature, the Council of the District of Columbia, intended the sanctions for these BTA offenses to be civil or criminal penalties. This is a question of statutory construction. *Mitchell, supra*, 303 U.S. at 399, 58 S.Ct. at 633. The question is an easy one to answer, for the intent of the Council in this instance is absolutely clear.

The BTA offenses at issue here are all violations of Title 18 of the District of Columbia Municipal Regulations, which was issued by the District of Columbia Department of Transportation pursuant to D.C.Code § 40–607 (1990). That section is part of the Traffic Adjudication Act of 1978 ("the Act"), D.C. Law 2–104, 25 D.C. Reg. 1275 (1978) (codified at D.C.Code §§ 40–601 through 40–642 (1990)). Both the Act and its legislative history explicitly state that the Council intended to "decriminalize" these offenses. D.C.Code § 40–601 ("It is the intent of the Council ... to decriminalize and to provide for the administrative adjudication of certain [traffic] violations"); COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON THE JUDICIARY, REPORT ON BILL NO. 2–195, at 2 (1978) (the provisions of the Act "decriminalize parking and minor traffic infractions"); *see also District of Columbia v. Sullivan*, 436 A.2d 364, 365 (D.C.1981). The language of the Act reflects the same intent in several other places. For example, it refers to authorized penalties as "civil fines." D.C.Code § 40–605(a). It denotes persons charged with violations as "respondents" rather than "defendants." D.C.Code § 40–616. It states that an order, entered pursuant to the BTA's determination that a violation has occurred, "shall be civil in nature." D.C.Code § 40–616(e). The Act also excepts several more serious traffic violations such as reckless driving, D.C. § 40–712(b), and driving while intoxicated, D.C.Code § 40–716(b), from the BTA's jurisdiction, noting that the excepted violations "shall continue to be prosecuted as criminal offenses." D.C.Code § 40–612.[8]

It would be difficult to draft language more plainly expressing the Council's intent to treat BTA offenses as civil, not criminal, violations. The conclusion is inescapable that the Council intended the sanctions for all BTA offenses to be civil penalties.[9]

---

**7.** The term "BTA offenses" as used in this opinion refers to violations of the traffic regulations (Title 18 of the DCMR), such as those with which Purcell was charged. These include the offenses of running a red light and speeding and may or may not include failing to yield to a pedestrian. See note 4, *supra.*

**8.** Negligent homicide, for which Purcell was indicted in the instant case, is one of those offenses specifically excepted from the Act's coverage. D.C.Code § 40–612(3).

**9.** The Court in *Helvering v. Mitchell, supra*, in holding that the penalty in that case was civil rather than criminal, emphasized that the statutory scheme would be unconstitutional if it provided for criminal sanctions. 303 U.S. at 402, 58 S.Ct. at 634–35. From this fact the Court concluded that Congress must therefore have intended that the penalty be civil. We reach the same conclusion in this case. The Act allows the District to prove traffic offenses before the BTA "by clear and convincing evidence." D.C.Code § 40–616(a). If the traffic offenses were criminal, this provision would be unconstitutional, since the government in any criminal case must prove the defendant's guilt beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970). This fact is further evidence (in addition to the plain language of the Act) of the Council's intention to make the BTA offenses with which Purcell was charged civil rather than criminal violations. *See Mitchell, supra*, 303 U.S. at 403, 58 S.Ct. at 635 (noting that in a civil proceeding "there is no burden upon the Government to prove its case beyond a reasonable doubt").

### B

Having reached this conclusion, we must next decide whether, despite the Council's intention to make the BTA offenses in this case civil infractions, the penalties imposed for those offenses are nevertheless "so punitive, either in purpose or effect as to negate that intention." *Ward, supra,* 448 U.S. at 249, 100 S.Ct. at 2641.

The Supreme Court has recently held that the imposition of a civil penalty after a criminal prosecution may be an unconstitutional second "punishment" for the same crime when the amount of the civil sanction is "so divorced from any remedial goal that it constitutes 'punishment' for the purpose of double jeopardy analysis." *United States v. Halper,* 490 U.S. 435, 443, 109 S.Ct. 1892, 1899, 104 L.Ed.2d 487 (1989). The defendant in *Halper* was convicted of sixty-five separate violations of the criminal false claims act. The government then brought an action against him under the civil false claims act, a different statute, seeking a statutory penalty of $130,000, although its actual loss was only $585. Because the civil fine sought by the government was "exponentially greater" than its damages, the Court ruled that the civil penalty, as applied to Halper, amounted to a second punishment barred by the Double Jeopardy Clause. *Id.* at 445, 109 S.Ct. at 1900. Citing *Halper,* Purcell argues that when the intent of the civil sanction is to punish the offender, the sanction is criminal for double jeopardy purposes. Because the purpose of the sanctions established for traffic offenses before the BTA is to punish the offender, he maintains that those sanctions are criminal, so that he cannot be prosecuted further for any offense arising out of the same events. We think he reads *Halper* too broadly.

The Court in *Halper* recognized that "for the defendant even remedial sanctions carry the sting of punishment," 490 U.S. at 447 n. 7, 109 S.Ct. at 1901 n. 7 (citation omitted), noting the common understanding "that civil proceedings may advance punitive as well as remedial goals...." *Id.* at 447, 109 S.Ct. at 1901. Acknowledging that it was "difficult if not impossible" to calculate "the precise dollar figure at which a civil sanction has accomplished its remedial purpose of making the Government whole, but beyond which the sanction takes on the quality of punishment," the Court emphasized that its holding was "a rule for the rare case ... where a fixed penalty provision subjects a prolific but small-gauge offender to a sanction *overwhelmingly disproportionate to the damages he has caused.*" *Id.* at 449, 109 S.Ct. at 1902 (emphasis added). We see no such overwhelming disproportion in the case at bar. On the contrary, we are satisfied that the modest fines paid by Purcell in the BTA proceedings bore a rational relationship to the cost of enforcing the traffic regulations. This is manifestly not the "rare case" envisioned by the *Halper* Court.[10]

We hold, therefore, that the BTA proceedings in the instant case were civil, not criminal, and that jeopardy therefore did not attach to those proceedings. That would be the end of the matter but for an ambiguity as to the charge of failing to yield the right of way to a pedestrian. To that ambiguity we now turn our attention.

### IV

■ Purcell claims that the BTA exercised jurisdiction over the charge of failing to yield to a pedestrian, an offense proscribed by a criminal statute, D.C.Code § 40–726. He asserts that because he in effect pleaded guilty to that charge by paying the required fine, jeopardy attached when he made the payment. He is mistaken.

---

**10.** *Halper* is distinguishable on other grounds as well. The penalty was so large in *Halper* because the statute prescribed a civil fine of $2,000 for each violation. The defendant committed sixty-five violations, thereby subjecting himself to a fine of $130,000. Significantly, the Court did not declare that the civil penalty in *Halper* would be criminal in all cases; rather, it held that the penalty *as applied to the defendant in that case* constituted punishment for purposes of the Double Jeopardy Clause, and remanded the case for the imposition of a penalty more in line with the government's actual losses. 490 U.S. at 452, 109 S.Ct. at 1903–04.

As we have already discussed in part III of this opinion, jeopardy can never attach in a BTA proceeding because BTA offenses are civil rather than criminal violations. If the charge of failing to yield to a pedestrian was brought under the applicable regulation, 18 DCMR § 2301.1, then what we said in part III applies to this charge as well. However, since there is a possibility that Purcell may have been charged with a violation of D.C.Code § 40–726 (see note 4, *supra*), we must consider whether he was ever placed in jeopardy on that charge. A violation of section 40–726 is indisputably a criminal offense, since it is punishable by imprisonment for up to thirty days, as well as a fine of not more than $500. Thus the issue with respect to Purcell's possible violation of D.C.Code § 40–726 is not whether jeopardy could attach, but at what point in the proceedings—if any—jeopardy did attach.

Jeopardy attaches when the jury is sworn or, in a nonjury trial, when the judge begins to hear the evidence. *Serfass v. United States*, 420 U.S. 377, 388, 95 S.Ct. 1055, 1062–63, 43 L.Ed.2d 265 (1975); *Carter v. United States*, 497 A.2d 438, 441 (D.C.1985); *Douglas v. United States*, 488 A.2d 121, 130 (D.C.1985). When the defendant enters a guilty plea, jeopardy attaches when that plea is accepted by a court of competent jurisdiction. *United States v. Dickerson*, 106 U.S. App. D.C. 221, 225, 271 F.2d 487, 491 (1959). The Supreme Court has held, however, that jeopardy does not attach in any proceeding before a court having no jurisdiction over the case. *See United States v. Ball*, 163 U.S. 662, 669, 16 S.Ct. 1192, 1194, 41 L.Ed. 300 (1896); *accord, e.g., Hall v. McKenzie*, 575 F.2d 481, 484 (4th Cir.1978) ("it is settled that an accused cannot be placed in jeopardy by a court lacking jurisdiction to decide his case" (citations omitted)). The trial court ruled in this case that the BTA had no jurisdiction over violations of D.C.Code § 40–726, so that, assuming Purcell was charged with such a violation, Purcell was never placed in jeopardy with respect to it.

This ruling, in our view, was entirely correct.

Although violations of section 40–726 are not specifically excepted by section 40–612 from the BTA's jurisdiction,[11] their omission appears to have been an oversight on the part of the Council, since section 40–726 was enacted several years after section 40–612. In any event, regardless of whether or not section 40–726 is listed in section 40–612, the BTA lacks the power to order the imprisonment that section 40–726 prescribes as a punishment for its violation. Under D.C.Code § 40–604(b)(2), the BTA is authorized only to impose fines, order attendance at traffic school, and suspend drivers' licenses pending the payment of such fines and completion of traffic school. We hold that because it has no power to imprison anyone for a violation of D.C.Code § 40–726, the BTA lacks jurisdiction even to entertain charges brought under section 40–726. The Superior Court, on the other hand, has such jurisdiction as part of its general jurisdiction over criminal cases under D.C.Code § 11–923 (1989). Thus, even if we were to accept Purcell's argument that paying the fine to the BTA constituted a guilty plea, it is undisputed that this "plea" was never accepted by the Superior Court, the only court having jurisdiction over the offense. It follows that jeopardy never attached in any proceeding in which Purcell was charged with a violation of D.C.Code § 40–726 (assuming he was so charged).

## V

The order of the trial court denying Purcell's motion to dismiss the indictment in this case on double jeopardy grounds is therefore

*Affirmed.*

---

11. D.C.Code § 40–612 lists twenty offenses or categories of offenses which are not subject to the BTA's jurisdiction but "shall continue to be prosecuted as criminal offenses."