960 F.2d 1501
 Fed. Sec. L. Rep. P 97,735
UNITED STATES of America, Plaintiff-Appellee,
v.
Gerald Leo ROGERS, aka T.T. Smith III, Claude de Bleu, Allan
J. Martin, James F. Stokes, J.R. Kingston and
Ambrose I. Goldsmith, Defendant-Appellant.
 No. 90-1316.
 United States Court of Appeals,
Tenth Circuit.
 April 2, 1992.
 
 Thomas M. O'Rourke, Asst. U.S. Atty. (Michael J. Norton, U.S. Atty., Gerald J. Rafferty, Asst. U.S. Atty. with him, on the brief), Denver, Colo., for plaintiff-appellee.
 Stephen M. Wheeler, Denver, Colo., for defendant-appellant.
 Before SEYMOUR and BARRETT, Circuit Judges, and BROWN*, District Judge.
 BARRETT, Senior Circuit Judge.
 
 
 1
 Gerald Leo Rogers (Rogers) appeals from his jury conviction on thirteen counts of a thirty count indictment. The indictment charged Rogers with ten counts of mail fraud, 18 U.S.C. § 1341; one count of RICO, 18 U.S.C. § 1962(c); four counts of securities violations, 15 U.S.C. § 77l(1) and 18 U.S.C. § 2; and six counts of tax violations, 26 U.S.C. § 7206(2); all arising out of Rogers' alleged fraudulent participation in two tax shelter programs for gold mine development expenses.
 
 
 2
 In addition to the above substantive counts, the indictment charged Rogers with one count of conspiracy to obstruct justice, 18 U.S.C. § 371, and four counts of obstruction of justice, 18 U.S.C. § 1503. The conspiracy count alleged that Rogers conspired with others to obstruct a federal grand jury investigation. The four obstruction charges alleged that Rogers counseled four different witnesses to give false testimony before the grand jury. All of the above-referenced charges relate to criminal activity which took place between 1979 and 1981.
 
 
 3
 The claims of fraud advanced in this case were first alleged in a fraud injunctive complaint filed against Rogers in federal district court in California on October 30, 1980, by the Securities and Exchange Commission (SEC). In that complaint, the SEC charged Rogers with controlling a company known as the International Monetary Exchange (IME) and other companies related to tax shelter programs; using aliases; and committing numerous fraudulent acts and misrepresentations in connection with the tax shelter programs.
 
 
 4
 After a six-week bench trial, the United States District Court for the Central District of California, Judge Mariana R. Pfaelzer presiding, entered a 54-page order finding in favor of Rogers on every count. This order was subsequently affirmed by the Ninth Circuit. See, S.E.C. v. Rogers, 790 F.2d 1450 (9th Cir.1986).
 
 Background
 
 5
 In 1979-80, Rogers operated tax shelters under the IME company name, and in 1981, he operated them under the name of General Mining, S.A. (GEMSA). Under the tax shelter programs, individual taxpayers were enticed into paying approximately $5,000 to acquire an interest in a mining lease held by one of the two companies, IME for the Paul Insard gold mine in French Guiana, and GEMSA for the Kanata Klondike I gold mine in Canada.
 
 
 6
 Through the use of brochures and presentations by salesmen, IME and GEMSA represented to taxpayers that the $5,000 investment equaled twenty percent (20%) of the mine development costs, and that the remaining eighty percent (80%) would be obtained by IME and GEMSA on behalf of the taxpayer through loans, options to mine the gold or other financing. IME and GEMSA further represented that, under the program, the taxpayer could deduct one hundred percent (100%) of the mine development costs from his/her current year income.
 
 Procedural History
 
 7
 On November 30, 1984, a federal grand jury in Denver, Colorado, returned a 30-count superceding indictment charging Rogers with the above-described federal criminal violations. In August, 1987, during pre-trial litigation, Rogers became a fugitive when he fled to Switzerland. Rogers was apprehended in April, 1990, and returned to the United States by extradition. Upon his return to the United States, Rogers was appointed representation by the Federal Public Defender's Office. However, in May, 1990, Rogers informed the district court that he wished to proceed pro se. The court instructed the Federal Public Defender to remain as advisory counsel.
 
 
 8
 In July, 1990, the RICO, conspiracy and tax violation charges were dismissed per the extradition treaty with Switzerland, and in August, 1990, one count of securities violation was dismissed by the government for lack of proof. The trial commenced in August, 1990, and at its conclusion in September, 1990, Rogers was found guilty on all remaining counts. In October, 1990, Rogers was sentenced to a total of twenty-five years imprisonment, to be served consecutively to a ten year sentence Rogers received in an unrelated case in California.
 
 
 9
 In January, 1986, prior to fleeing the jurisdiction, Rogers filed a motion for collateral estoppel pertaining to the charges involving the IME corporation. This motion was predicated on the fact that the IME claims in the SEC case had been adjudicated in his favor. The district court denied the motion in a lengthy opinion addressing numerous motions. See, United States v. Rogers, 636 F.Supp. 237, 254 (D.Colo.1986). In its opinion, the district court stated that,
 
 
 10
 Review of the complaint and the court's ruling in the SEC case and comparison of the issues in that case with the superseding indictment in the present case reveals the issues are not identical. The SEC case focused on alleged violations of federal securities laws from 1978 to 1980. The offenses charged in the instant case allegedly did not occur until after that period. Although the overall scheme may be the same, the offenses charged in the superseding indictment are not the same as those litigated in the SEC case. Accordingly, Rogers' motion for collateral estoppel is denied.
 
 
 11
 Id. at 255.
 
 
 12
 At the request of the government, the district court addressed the issue of collateral estoppel again in its order granting the government's motion to compel. The government's request was supported by Count I of the superceding indictment which alleged fraudulent schemes in 1977 and 1978. In acknowledging the error of its statement regarding the dates of the alleged offenses (1978 to 1980), the court declared the statement obiter dictum to its holding that there was no identity of issues between the two actions. (R., Vol. V, Tab 81, p. 2).
 
 
 13
 At trial, the government presented evidence that the brochures and salesmen's presentations included material misrepresentations and that Rogers' companies never raised the eighty percent (80%) portion of the costs. The government further established that Rogers' central misrepresentation was that matching funds had been acquired and spent for mining development.
 
 
 14
 The government contended that although the French Guiana concession had respectable mineral deposits, it would not make a profit because of the mining techniques employed at the site. The government further contended that the investors received neither a return on their investment nor gold and that the Internal Revenue Service (IRS) disallowed their deductions.
 
 Appellate Contentions
 
 15
 On appeal, Rogers contends that: (1) the district court erred in determining the government was not barred from prosecuting him by the Fifth Amendment protection against double jeopardy and the doctrine of collateral estoppel due to the prior SEC action finding in his favor; (2) he was denied Brady v. Maryland material and investigative assistance, thus depriving him of a fair trial; (3) the government evidence presented at trial was not sufficient to meet the burden of proof beyond a reasonable doubt; (4) the outrageous conduct of the district court and government required dismissal of the charges; and (5) the sentence of twenty-five consecutive years violated his constitutional guarantee of proportionality in sentencing.
 
 Discussion--Conclusion
 
 16
 We respectfully disagree with the district court's determination that its erroneous statement regarding the dates involved in the two suits was obiter dictum and with the district court's findings that the four requisites for application of the doctrine of collateral estoppel had not been met. However, we reject Rogers' contentions that double jeopardy applies, and that the entire prosecution should be dismissed. Thus, we hold that the district court correctly determined that the double jeopardy clause was inapplicable. However, we hold that the district court erred in determining that the doctrine of collateral estoppel did not apply to Counts I-IV in the superceding indictment regarding the IME corporation. As to Rogers' remaining contentions of error, we hold that they are without merit.
 
 I.
 
 17
 Rogers contends that the district court erred in its determination that the government was not barred from prosecuting him by the Fifth Amendment protection against double jeopardy and the doctrine of collateral estoppel.
 
 
 18
 The traditional bar of double jeopardy prohibits the prosecution of the crime itself, whereas collateral estoppel, in a more modest fashion, simply forbids the government from relitigating certain facts in order to establish the fact of the crime.
 
 
 19
 United States v. Mock, 604 F.2d 341, 343-44 (5th Cir.1979).
 
 
 20
 a.
 
 
 21
 We review de novo the legal conclusion made by the district court regarding double jeopardy claims. United States v. Raymer, 941 F.2d 1031, 1937 (10th Cir.1991); United States v. Cardall, 885 F.2d 656, 665 (10th Cir.1989). Underlying findings of fact are reviewed under the clearly erroneous standard. Raymer, supra, at 1037; United States v. Jones, 816 F.2d 1483, 1486 (10th Cir.1987).
 
 
 22
 The Double Jeopardy Clause of the Fifth Amendment embodies three protections; the protection against a second prosecution for the same offense after an acquittal or conviction, and the protection against multiple punishments for the same offense. United States v. Felix, 926 F.2d 1522, 1525 (10th Cir.1991).
 
 
 23
 Rogers argues that his first and third protections under the Double Jeopardy Clause were violated. He contends that the superceding indictment seeks to prove conduct identical and/or similar to conduct for which he had already been prosecuted in the SEC case. Rogers argues that the entire prosecution is a violation of the Double Jeopardy Clause, citing Grady v. Corbin, 495 U.S. 508, 520, 110 S.Ct. 2084, 2093, 109 L.Ed.2d 548 (1990) (superceded by statute as stated in Purcell v. United States, 594 A.2d 527 (D.C.App.1991)), in which the Supreme Court stated that,
 
 
 24
 the Double Jeopardy Clause bars a subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted. (footnote omitted) ... This is not an "actual evidence" or "same evidence" test (footnote omitted). The critical inquiry is what conduct the State will prove, not the evidence the State will use to prove that conduct.
 
 
 25
 However, the Supreme Court further stated in Grady, that "As we have held, the presentation of specific evidence in one trial does not forever prevent the government from introducing that same evidence in a subsequent proceeding." See Dowling v. United States, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990) (declined to extend collateral estoppel to exclude in all circumstances the later use of evidence simply because it related to alleged criminal conduct for which a defendant has been acquitted). Thus, we conclude that, even though the prior SEC case was civil rather than criminal, because the SEC case involved conduct similar to that charged in the superceding indictment does not mandate that the entire prosecution of Rogers be dismissed.
 
 
 26
 Rogers' alternative theory that the Double Jeopardy Clause applies stems from United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), in which the Supreme Court applied the Double Jeopardy Clause to a case involving first a criminal prosecution, and subsequently a civil action based upon the same conduct. The application was founded on the third protection of the Double Jeopardy Clause, namely, the protection against multiple punishments for the same offense. Several courts have determined that Halper is applicable when a civil penalty is imposed prior to a criminal conviction. United States v. Park, 947 F.2d 130, 134 (5th Cir.1991) (vacated in part on different grounds); see also, United States v. Mayers, 897 F.2d 1126, 1127 (11th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 178, 112 L.Ed.2d 142 (1990); United States v. Marcus Schloss & Co., Inc., 724 F.Supp. 1123, 1126 (S.D.N.Y.1989).
 
 
 27
 In Halper, the manager (Halper) of a medical laboratory, which provided medical service for patients eligible for benefits under the Medicare program, was convicted of 65 counts of filing false claims for reimbursement for services rendered, totaling $585, and was sentenced to imprisonment for two years and fined $5,000. Following the conviction, the government filed suit against Halper under the civil False Claims Act, and was granted summary judgment. The remedial provision of the Act requires a civil penalty of $2,000 for each violation of the Act; thus, it appeared that Halper was subject to a statutory penalty of more than $130,000. However, the district court concluded that, in light of Halper's previous criminal punishment, an additional penalty of $130,000 violated the Double Jeopardy Clause.
 
 
 28
 On appeal, the Supreme Court held that, while the penalties under the Act are civil in nature and do not ordinarily constitute multiple punishment,
 
 
 29
 the rare case, ... where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused ... and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, ... the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment.
 
 
 30
 Id. at 449, 109 S.Ct. at 1902.
 
 
 31
 Rogers contends that the principles in Halper should be applied in this case. We disagree. The Supreme Court emphasized that the Halper ruling was for "rare" cases only, and that "the only proscription established by our ruling is that the Government may not criminally prosecute a defendant, impose a criminal penalty upon him, and then bring a separate civil action based on the same conduct and receive a judgment that is not rationally related to the goal of making the Government whole." Id. at 451, 109 S.Ct. at 1903 (footnote omitted). In other words, to determine whether a separate civil action constitutes multiple punishment, "Halper requires a comparison between the civil penalty and the government's loss resulting from the defendant's conduct." United States v. Reed, 937 F.2d 575, 577 (11th Cir.1991). Halper does not dictate a comparison of the criminal penalty with the civil penalty. Id.
 
 
 32
 Several courts have distinguished Halper as "the rare case." See Reed, supra at 577; United States v. Cunningham, 757 F.Supp. 840, 846 (S.D.Ohio 1991); United States v. Moore, 765 F.Supp. 1251, 1257 (E.D.Va.1991); United States v. Valley Steel Products Co., 729 F.Supp. 1356, 1359 (CIT 1990); United States v. WRW Corp., 731 F.Supp. 237, 239 (E.D.Ky.1989); United States v. Pani, 717 F.Supp. 1013, 1018-19 (S.D.N.Y.1989). We agree. Therefore, we hold that the entire prosecution of Rogers was not barred by the Double Jeopardy Clause of the Fifth Amendment.
 
 
 33
 However, the Supreme Court has held that "The question is no longer whether collateral estoppel is a requirement of due process, but whether it is a part of the Fifth Amendment's guarantee against double jeopardy.... We do not hesitate to hold that it is." Ashe v. Swenson, 397 U.S. 436, 442-45, 90 S.Ct. 1189, 1193-95, 25 L.Ed.2d 469 (1970).
 
 
 34
 b.
 
 
 35
 We review de novo the interpretation of law involving the applicability of collateral estoppel. Hubbert v. City of Moore, Okla., 923 F.2d 769, 772 (10th Cir.1991). The doctrine of collateral estoppel may be applicable where the first cause of action was civil and the second was criminal. Yates v. United States, 354 U.S. 298, 335, 77 S.Ct. 1064, 1085, 1 L.Ed.2d 1356 (1957) (overruled on other grounds); United States v. Mumford, 630 F.2d 1023, 1027 (4th Cir.1980), cert. denied, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 238 (1981).
 
 
 36
 The Supreme Court has defined collateral estoppel as, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe, supra, at 443, 90 S.Ct. at 1194. See also, Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979); Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); Matter of Lombard, 739 F.2d 499, 502 (10th Cir.1984). The Supreme Court mandates two inquiries in determining whether the doctrine of collateral estoppel applies: "First, what facts were necessarily determined in the first law suit? ... Second, has the government in a subsequent trial tried to relitigate facts necessarily established against it in the first trial?" United States v. Mock, 604 F.2d 341, 343 (5th Cir.1979), (citations omitted); United States v. Whitaker, 702 F.2d 901 (11th Cir.1983).
 
 
 37
 We have held that the doctrine of collateral estoppel can only be applied when each of the following criteria have been met:
 
 
 38
 (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.
 
 
 39
 Lombard, supra, at 499, citing Peffer v. Bennett, 523 F.2d 1323, 1325 (10th Cir.1975). The Supreme Court instructs that, when determining whether collateral estoppel applies, a court must, " 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter,' " and that the inquiry " 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' " Ashe, supra, at 444, 90 S.Ct. at 1194 (footnote omitted), quoting Sealfon v. United States, 332 U.S. 575, 579, 68 S.Ct. 237, 239, 92 L.Ed. 180 (1948). See also, Mock, supra, at 344.
 
 
 40
 In the instant case, the district court determined that the first requisite for application of the doctrine had not been met, specifically, that the dates involved in the SEC case and the superceding indictment were not identical.[1] Rogers, 636 F.Supp. at 255. Upon reviewing its decision, the court further determined that while it had mistakenly found the dates not identical, such finding was obiter dictum to its memorandum opinion and order. (R., Vol. V, Tab 81, p. 2).
 
 
 41
 A careful review of the record reveals that Rogers did indeed meet the four requirements for application of the doctrine of collateral estoppel. Thus, the district court's finding regarding the collateral estoppel was not obiter dictum. The issue requirement has been met. The SEC case and the superceding indictment in this case alleged identical issues involving IME's participation in the tax shelter, and Rogers' participation in IME. Specific examples of the identical issues presented in both cases are too numerous to set forth in this opinion. However, a thorough comparison of the superceding indictment (R., Vol. I, Tab 2, pp. 1-36) with the memorandum opinion of the district court in the SEC case (Appellant's Brief, Attachment C) reveals identical issues relating to Rogers and IME in both cases.
 
 
 42
 The government's argument that the SEC case and the instant case involved two different "ultimate" issues fails. The government contends that the ultimate issue in the SEC case was whether Rogers should be enjoined from engaging in future conduct that violated the securities laws and that the ultimate issue in the instant case was whether Rogers was guilty of past criminal conduct. The government relies on a similar case, United States v. Mumford, 630 F.2d 1023, 1025-26 (4th Cir.1980), cert. denied, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 238 (1981), in its argument that the "ultimate" issues of the two cases are not identical.[2] The government's reliance is misplaced. The Mumford court held that the only issue litigated in the first SEC action was the likelihood of future SEC violations.
 
 
 43
 The 54-page order filed by the federal district court in the California SEC case brought against Rogers, detailing its findings of fact and conclusions of law, was very inclusive. The district court reached the merits of the case, in finding that Rogers did not conceive, organize, promote, sell, offer to sell, aid or abet the sale of or offer to sell the IME mine development tax shelters. The court found that Rogers did not control IME or any other person or entity involved in the tax shelter programs. (Appellant's Brief, Appendix C, p. 48). The court also found that Rogers did not have the requisite intent for fraud. (Appellant's Brief, Appendix C, p. 50).
 
 
 44
 In light of our comparison of the specific findings of the California federal district court with the issues alleged in the superceding indictment, we hold that the issues in the two cases regarding the IME counts are identical and that the first requirement for application of the doctrine of collateral estoppel has been met.
 
 
 45
 The second requirement, involving the finality of action, has also been met. The SEC case was adjudicated on the merits, and affirmed by the Ninth Circuit, see, Rogers, 790 F.2d 1450, supra, thus finalizing the SEC action before the commencement of the instant trial.
 
 
 46
 While neither side has asserted that privity does not exist in this case, we hold that the third requirement, that there be identical parties, or parties in privity, has been met. "There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is res judicata in relitigation of the same issue between that party and another officer of the government." (citation omitted), Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 402-03, 60 S.Ct. 907, 916-17, 84 L.Ed. 1263 (1940).
 
 
 47
 The fourth requirement that the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action, has been met. The government argues that it was not afforded a full and fair opportunity to litigate the issue because several witnesses admitted during the criminal trial that they had committed perjury in the SEC case and in preliminary stages of government inquiries. The government also contends that it wasn't given a full and fair opportunity to litigate because one of the witnesses was unavailable to the SEC, and that when the SEC requested the court hold open the record so that it could take the witness' deposition, the court refused.
 
 
 48
 While the record indicates that certain witnesses testified in the criminal trial that they had committed perjury in the SEC trial, all references to the perjured testimony cited by the government reveals perjured testimony that did not significantly affect the outcome of the trial. The record is replete with evidence which, without the aid of the perjured testimony, would have resulted in the same outcome.
 
 
 49
 When determining whether to hold open the trial record for additional testimony, a district court should consider the character of the testimony and the effect of such an action. 6A Moore's Federal Practice, p 59.04 at 59-31 to 33 (2d ed. 1991). "The court should also consider the diligence of the moving party, and any possible prejudice to the other party." Rogers, 790 F.2d at 1460, (citing Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 332, 91 S.Ct. 795, 803, 28 L.Ed.2d 77 (1971)).
 
 
 50
 In addressing the second contention by the government that it was not afforded a full and fair opportunity to litigate the issue because of the unavailability of a witness, the district court stated that, while the witness' testimony might have been of some benefit to the SEC[3], the content of the witness' potential testimony was unknown, leaving it unclear whether the outcome of the case would have been affected. The court further stated,
 
 
 51
 Moreover, although the SEC contends that it acted with due diligence in attempting to procure [the witness'] testimony, a review of the sequence of events indicates that the SEC did not act as diligently as it might have.
 
 
 52
 Id. at 1461.
 
 
 53
 The Supreme Court has held that when the ultimate issue has been decided by the jury in the first trial, "the constitutional guarantee [against double jeopardy] applies, irrespective of whether the jury considered all relevant evidence, and irrespective of the good faith of the [government] in bringing successive prosecutions." Harris v. Washington, 404 U.S. 55, 56, 92 S.Ct. 183, 184, 30 L.Ed.2d 212 (1971). It has been further determined that,
 
 
 54
 The loser in any case can point to some adverse ruling by the trial court at some stage of the litigation. Under the government's theory, the preclusive effect of that first suit will then turn on the loser's ability to convince a second court that the first court erred and that the loser might have won otherwise. The result--a rehearing of issues already decided--is exactly what the principle of collateral estoppel is supposed to prevent.
 
 
 55
 United States v. Abatti, 463 F.Supp. 596, 602 (S.D.Cal.1978). Therefore, while the SEC case was adjudicated absent certain testimony, nothing in the record or the arguments presented by the government solidify the contention that the government was denied a full and fair opportunity to litigate the issue. We hold that while the district court did not err in determining that the government was not barred from prosecuting Rogers under the Double Jeopardy Clause of the Fifth Amendment, it erred in determining that the government was not barred from prosecuting Rogers on the IME claims under the doctrine of collateral estoppel.
 
 II.
 
 56
 Rogers contends that the district court's denial of Brady v. Maryland material and investigative assistance deprived him of a fair trial.
 
 
 57
 The materiality of withheld evidence and its possible effect on the outcome of the trial are mixed questions of fact and law. Therefore, we review, de novo, a claim of failure to disclose evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). United States v. Buchanan, 891 F.2d 1436, 1440 (10th Cir.1989), cert. denied, 494 U.S. 1088, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990); United States v. Abello-Silva, 948 F.2d 1168, 1179 (10th Cir.1991).
 
 
 58
 In Brady, the Supreme Court stated that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, supra, at 87, 83 S.Ct. at 1196. See also, Moore v. Illinois, 408 U.S. 786, 794-95, 92 S.Ct. 2562, 2567-68, 33 L.Ed.2d 706 (1972). The Supreme Court further stated that "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985); United States v. Agurs, 427 U.S. 97, 104, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976).
 
 
 59
 However, we do not need to address the materiality issue when the evidence is produced. United States v. George, 778 F.2d 556, 562 (10th Cir.1985). The Brady rule is not violated when the material requested is made available during trial. United States v. Alberico, 604 F.2d 1315, 1319 (10th Cir.1979), cert. denied, 444 U.S. 992, 100 S.Ct. 524, 62 L.Ed.2d 422 (1979); United States v. Behrens, 689 F.2d 154, 158 (10th Cir.1982); George, supra, at 562.
 
 
 60
 Rogers argues that he filed a specific request for certain documents five years before trial; that they were not produced until the last day of trial; and that he was given only three hours to review the documents. Rogers further argues that had he been given the documents in a timely manner, he could have reviewed, investigated, and properly developed his defense, and that it is probable that the jury would have reached a different result. We have held that, "the relevant standard of materiality does not focus on the trial preparation, but instead on whether earlier disclosure would have created a reasonable doubt of guilt that did not otherwise exist." George, supra, at 562 (citing Agurs, supra, at 112 n. 20, 96 S.Ct. at 2401 n. 20).
 
 
 61
 Rogers asserts that attached to his Brady requests were documents which disclosed that certain Panamanian mining contracts, in which he had an interest, had been terminated due to interference by the SEC and the IRS. Rogers further asserts that it is a "logical assumption" that the documents he requested would have disclosed similar information regarding the French Guiana and Canadian mines.
 
 
 62
 The record indicates that Rogers was not denied a fair trial. Rogers' argument that it is a "logical assumption" that the government interfered with the mining operations in French Guiana and Canada is entirely speculative. Rogers did not set forth any specific documents that the government possessed which the prosecution failed to produce under Brady. In fact, Rogers conceded that he received the requested documents. The fact that the documents were received on the last day of the trial does not, in itself, indicate that he did not receive a fair trial. The record establishes that the government provided the requested documents to Rogers during trial, and that the requested evidence was admitted by the court. Therefore, we hold that there was no violation of Brady, supra.
 
 III.
 
 63
 Rogers contends that the evidence presented at trial was insufficient to meet the burden of proof beyond a reasonable doubt.
 
 
 64
 We review a challenge of the sufficiency of the evidence using a clearly erroneous standard. United States v. Backas, 901 F.2d 1528, 1529 (10th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 190, 112 L.Ed.2d 152 (1990). See also, United States v. Roberts, 898 F.2d 1465, 1468 (10th Cir.1990). We examine the record as a whole, both direct and circumstantial evidence, and any reasonable inferences therefrom, in a light most favorable to the government to determine whether a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. United States v. Cox, 929 F.2d 1511, 1514 (10th Cir.1991) (citing United States v. Bowie, 892 F.2d 1494, 1497 (10th Cir.1990)).
 
 
 65
 After a careful and thorough review of the record, we conclude that the evidence was sufficient to prove beyond a reasonable doubt that Rogers operated and controlled the GEMSA tax shelter scheme. There is abundant evidence indicating, among other things, that Rogers made material misrepresentations to investors; that Rogers himself used deceptive methods in soliciting investors, and that he instructed others in the use of deceptions; that Rogers used mailings in the solicitation of the tax shelter; and that Rogers used falsified information on the solicitation brochures. Accordingly, we hold that the district court did not err in finding that the government had presented sufficient evidence to meet the burden of proof beyond a reasonable doubt.
 
 IV.
 
 66
 Rogers contends that the outrageous conduct of the district court and government required dismissal of the charges. Specifically, Rogers contends that the government's misconduct before the grand jury; subornation and coercion of witnesses; and tampering with witnesses; along with the court's interruption of his examination of witnesses and derogatory characterization of his evidence, was so egregious as to warrant dismissal.
 
 
 67
 We review the legal conclusions involved in a Sixth Amendment claim de novo. Tapia v. Tansy, 926 F.2d 1554, 1557 (10th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 115, 116 L.Ed.2d 84 (1991). "Our review of whether the prosecutors engaged in specific flagrant or egregious misconduct before the grand jury involves questions of historical fact governed by the clearly erroneous standard." United States v. Kilpatrick, 821 F.2d 1456, 1467 (10th Cir.1987), aff'd sub nom. Bank of Nova Scotia v. United States, 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988). See also, Campbell v. United States, 373 U.S. 487, 493, 83 S.Ct. 1356, 1360, 10 L.Ed.2d 501 (1963); cf. Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). The Supreme Court has stated that findings of historical fact are clearly erroneous only when after reviewing the entire record, the reviewing court "is left with the definite and firm conviction that a mistake has been committed." Anderson, supra, at 573, 105 S.Ct. 1511. However, "there is a presumption of regularity that attaches to grand jury proceedings." Kilpatrick, supra, at 1473.
 
 
 68
 After a careful review of the record, it is apparent that Rogers has not met the burden required to overcome the presumption of regularity. Rogers has made numerous claims regarding the government's conduct during the investigation and prosecution of this case. We agree with the government that these claims are a "series of unsubstantiated claims." (Appellees' Brief, p. 31).
 
 
 69
 Rogers does not set forth proof to support his allegations of prosecutorial misconduct, and he does not specifically indicate how the conduct prejudiced his trial. The record indicates that while the district court decided Rogers' motion to dismiss the indictment without conducting an evidentiary hearing, there was sufficient evidence attached to Rogers' motion which, with the arguments presented, was such as to afford the district court with all necessary background to reach an informed decision. Furthermore, the court deferred its ruling on the motion until all grand jury transcripts were available, thus indicating that the district court's decision was based on all pertinent information. Rogers, 636 F.Supp. at 255-56, supra.
 
 
 70
 Rogers' contention that the government tampered with witnesses, was also properly handled by the district court. See, United States v. Rogers, 642 F.Supp. 934 (D.Colo.1986). The district court acknowledged that the government had violated the order not to contact witnesses, but that the violation was unintentional. The court remedied the violation by sending out a curative letter, in which the court advised that the witnesses may speak with any individual they wish, and that it strongly urged the witnesses to cooperate. Id. at 936. We do not agree with Rogers that the curative letter was insufficient, or that "the seed of noncooperation" had already been planted by the government.
 
 
 71
 Rogers concludes his argument by focusing on the court's handling of the trial. Rogers contends that the district court's interruption of his examination of witnesses and his closing argument, coupled with derogatory characterizations of his evidence, interfered with his right to a fair trial.
 
 
 72
 "Effective cross-examination only requires that the trial judge not limit the scope of cross-examination so much that it prevents the jury from having sufficient information to make a 'discriminating appraisal' of the relevant issue." Tapia, at 1559. See also, United States v. Atwell, 766 F.2d 416 (10th Cir.1985), cert. denied, 474 U.S. 921, 106 S.Ct. 251, 88 L.Ed.2d 259 (1985) (district court has discretion to limit the scope of cross-examination, and such limitations are reversible only if found clearly prejudicial to the defendant).
 
 
 73
 The record indicates that any and all interruptions by the district court during Rogers' examination of witnesses were appropriate. Due to Rogers' pro se representation, the court was perhaps compelled to take a more active part in the management of the trial. However, we have held that a court "may even reprimand or rebuff counsel when necessary to maintain control of the proceeding." United States v. MacKay, 91 F.2d 616, 622 (10th Cir.1973), cert. denied, 416 U.S. 972, 94 S.Ct. 1996, 40 L.Ed.2d 560 (1974). See also, Whitlock v. United States, 429 F.2d 942 (10th Cir.1970); United States v. Gleeson, 411 F.2d 1091 (10th Cir.1969). The record reflects that the district court interrupted the examination of witnesses at appropriate times throughout the trial.
 
 
 74
 Rogers also cites the district court's interruption of his closing argument in his claim that the court's conduct was egregious. The district court limited closing arguments to 45-50 minutes for each side. Rogers received a three minute warning from the court prior to the expiration of his allotted time. At the completion of the three minutes, Rogers was asked by the court to conclude his arguments. Rogers continued without concluding, thus requiring the court to interrupt him again with an instruction that Rogers conclude his arguments.
 
 
 75
 "A district court has broad discretion in limiting the scope of closing arguments." Cole v. Tansy, 926 F.2d 955, 958 (10th Cir.1991), citing, Herring v. New York, 422 U.S. 853, 862, 95 S.Ct. 2550, 2555, 45 L.Ed.2d 593 (1975); United States v. Rivera, 778 F.2d 591, 593-94 (10th Cir.1985), cert. denied, 475 U.S. 1068, 106 S.Ct. 1384, 89 L.Ed.2d 609 (1986); United States v. Baker, 638 F.2d 198-203 (10th Cir.1980). We find no abuse of discretion in the court's restricting the time period each party had for closing arguments. There certainly was no error of constitutional dimension.
 
 
 76
 Rogers' final contention is that the court's conduct was improper in that the court made derogatory comments about his evidence. We agree with the government that, absent any specific illustrations of the derogatory comments and objections to the comments by Rogers, we may reverse only if the comments constituted plain error. United States v. Pearson, 798 F.2d 385, 387 (10th Cir.1986). A careful review of the record shows that the court made few remarks regarding the evidence, and that none of the comments prejudiced Rogers.
 
 
 77
 Therefore, we hold that neither the conduct of the district court, or that of the government, constituted egregious conduct meriting a reversal.
 
 V.
 
 78
 Rogers contends that the consecutive sentence violated his constitutional protection against multiple punishment for the same offense, in violation of the Fifth Amendment of the Constitution; and his constitutional guarantee of proportionality in sentencing, in violation of the Eighth Amendment of the Constitution.
 
 
 79
 On November 30, 1984, a federal grand jury in Denver, Colorado, returned a 30-count superceding indictment charging Rogers with various federal criminal violations arising from his alleged participation in the IME and GEMSA tax shelter schemes during the years 1979-1981. Upon Rogers' conviction by jury, the district court imposed the following judgment:
 
 
 80
 Defendant is committed to the custody of the Attorney General or his duly authorized representative to five (5) years imprisonment as to Counts I, XII, XIII to be served concurrently; five (5) years as to Counts II, V and VI to be served concurrently with each other and consecutively to Counts I, XII and XIII. Defendant is further committed to five (5) years on each of Counts III, VII and VIII to be served concurrently with each other and consecutively to Counts I, II, V, VI, XII and XIII; five (5) years as to Counts IV, IX and X to be served concurrently with each other and consecutively to Counts I, II, III, V, VI, VII, VIII, XII and XIII; five (5) years on Count XIV to be served consecutively to the terms imposed in Counts I thru X, XII and XIII for a total term of imprisonment of twenty-five (25) years. All terms are consecutive to Docket # 82-CR-292 imposed in the Central District of California on March 26, 1990.
 
 
 81
 Appellant's Brief, Appendix A.
 
 
 82
 Rogers contends that the district court attempted to control his sentence beyond appellate review by imposing a sentence which would remain the same even should the IME counts be dismissed. He further argues that the ultimate facts in the case pertained only to two alleged fraud schemes, and that, therefore, only two consecutive sentences should have been imposed.
 
 
 83
 The thirteen counts upon which Rogers was convicted involved acts alleged to have occurred during the period 1979-1981. The Sentencing Guidelines promulgated by the United States Sentencing Commission pursuant to the Sentencing Reform Act of 1984, 28 U.S.C. §§ 991-998, do not apply to offenses which occurred before November 1, 1987, the effective date of the Act. Accordingly, the rules recited hereafter are those applicable pre-Guidelines.
 
 
 84
 The established rule regarding review of sentences is that, "once it is determined a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." Dorszynski v. United States, 418 U.S. 424, 431, 94 S.Ct. 3042, 3047, 41 L.Ed.2d 855 (1974). See also, United States v. Dawes, 874 F.2d 746, 750 (10th Cir.1989), United States v. Hack, 782 F.2d 862, 870 (10th Cir.), cert. denied, 476 U.S. 1184, 106 S.Ct. 2921, 91 L.Ed.2d 549 (1986), United States v. O'Driscoll, 761 F.2d 589, 597 (10th Cir.1985), cert. denied, 475 U.S. 1020, 106 S.Ct. 1207, 89 L.Ed.2d 320 (1986).
 
 
 85
 As to Rogers' first contention that the sentence violated his Fifth Amendment right, "[i]t is well established that each use of the mails is a separate offense under the mail fraud statute and that consecutive sentences may be imposed properly, even if the mailings arose from a single concerted plan to defraud." United States v. Shaid, 730 F.2d 225, 230 (5th Cir.1984), cert. denied, 469 U.S. 844, 105 S.Ct. 151, 83 L.Ed.2d 89 (1984) (citations omitted); see also, Mitchell v. United States, 142 F.2d 480, 481 (10th Cir.1944). We have held that a similar doctrine may be applied to repeated violations of the Securities Act. MacKay, supra, at 624.
 
 
 86
 We agree with the government's contention that the district court could have ordered that all thirteen (13) of the counts be served consecutively, rather than ordering some of the counts served concurrently. Thus, we hold that the district court properly imposed a sentence for each count involving the mail fraud and securities fraud statutes. We further hold that it was proper for the court to order some of the counts to be served concurrently with each other and consecutively with other counts.
 
 
 87
 Rogers contends that his sentence violated his Eighth Amendment right to protection against cruel and unusual punishment in that the sentence was "disproportionate in reference to the offense and the culpability of the offender." Appellant's Brief at 45. We have held that a criminal sentence must be proportionate to the crime committed, and if the sentence is so disproportionate to the crime as to "shock the moral sense of the community," the sentence is impermissible. United States v. Hack, 782 F.2d 862, 868 (10th Cir.1986), citing Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910) and Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).
 
 
 88
 The Supreme Court has stated that a court's analysis of the proportionality of a sentence under the Eighth Amendment should be guided by objective criteria, and that "the absolute magnitude of the crime may be relevant. Stealing a million dollars is viewed as more serious than stealing a hundred dollars." Id. at 293, 103 S.Ct. at 3011. It has been emphasized that the reviewing court should give substantial deference to the discretion of the trial court in sentencing convicted defendants. Hack at 869.
 
 
 89
 We have held that "unless we are convinced that the sentences are 'unconscionably excessive' the trial court's discretion in imposing sentences within statutory limits will not be disturbed." United States v. Brewer, 630 F.2d 795, 804 (10th Cir.1980), citing United States v. Galoob, 573 F.2d 1167 (10th Cir.1978); MacKay, supra.
 
 
 90
 Rogers was convicted of offenses which, in essence, defrauded many individuals out of millions of dollars. Rogers' contention that the sentence was a "devious scheme" initiated by the district court is wholly without merit. As to Counts V-X, XII, XIII and XIV of the superceding indictment, we hold that the district court considered the magnitude of the offense, properly determined the sentence within the limitations set forth in 18 U.S.C. § 1341 and 15 U.S.C. § 77x, and that the sentences are not unconscionably excessive. However, as to Counts I-IV of the superceding indictment, we hold that collateral estoppel should have applied.
 
 
 91
 Therefore, we AFFIRM the district court's judgment on Counts V-X, XII, XIII, and XIV. However, we REMAND to the district court with directions to enter an order dismissing Counts I-IV of the superceding indictment.
 
 
 
 *
 The Honorable Wesley E. Brown, Senior Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [1]
 The court did not address whether the other requirements had been met, as its determination that the first requirement had not been met was dispositive
 
 
 [2]
 The Mumford case involved an SEC civil complaint and action for injunctive relief on the basis of alleged securities act violations. Subsequent to the dismissal of the SEC action for failure to show a likelihood of future violations, the defendants were indicted for the same activities involved in the civil injunctive action
 
 
 [3]
 Had the witness testified that Rogers controlled IME, and that certain officers of IME did not exist