**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 11 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

GODWIN NONYELUM
CHINAGOROM,

      Defendant-Appellant.

No. 97-2214
(D.C. No. CR-96-539-HB)
(District of New Mexico)

---

**ORDER AND JUDGMENT***

---

Before **PORFILIO**, **MCWILLIAMS**, and **HENRY**, Circuit Judges.

---

      Godwin Nonyelum Chinagorom was charged with reentry into the United States

after having been deported subsequent to a felony conviction.  Pursuant to a plea

---

     * This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

agreement, he pled guilty and was sentenced to time served (249 days) followed by 3-years' supervised release. He appeals his conviction and sentence.[1]

Appellant argues the district court: (1) breached a promise to sentence him to 8 months' imprisonment when it sentenced him to 8 months and 7 days already served plus 3 years' supervised release; (2) violated Fed. R. Crim. P. 11(e)(2) by failing to advise him he had no right to withdraw his guilty plea if the court rejected the government's sentencing recommendation; and (3) failed to inquire sua sponte if he understood the immigration custody consequences of his plea. Finding no error, we affirm.

Mr. Chinagorom was born in Nigeria and first came to the United States on a student visa. Subsequently deported for having committed a crime of moral turpitude resulting in a sentence of over one year, he reentered the United States in early 1996 without permission of the Attorney General, married a citizen, and found employment. In August 1996, INS arrested him and put him in custody.

---

[1]A question of our jurisdiction was raised at the outset, but we now conclude jurisdiction exists. Sentencing occurred on May 5, 1997, and judgment was entered on May 20. The district court docket sheet shows the notice of appeal was filed on June 26. The district court subsequently found the notice of appeal was placed in the prison mail system on May 6, was received by the district court on May 7 or 8, and, therefore, was timely appealed. Fed. R. App. P. 4(c) ("If an inmate confined in an institution filed a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely filed if it is deposited in the institution's internal mail system on or before the last day of filing."); *see also **Houston v. Lack***, 487 U.S. 266, 275 (1988) (a pro se prisoner's notice of appeal is filed at the moment it is delivered to prison authorities for forwarding to the district court).

On September 18, 1996, he was indicted under 8 U.S.C. §§ 1326(a)(1), (a)(2), and (b)(1), and held in custody thereafter until the day of sentencing. At a March 10, 1997 hearing, defendant's attorney, Gary Hill, and the prosecutor informed the court they had agreed to a plea of guilty with a proposed minimum mandatory sentence of 8 months. Hill suggested scheduling the plea and sentencing hearing for the date defendant would have been in custody for 8 months. The government did not accept that proposal and obtained a short recess to draft a written plea agreement.

According to the terms of the agreement, defendant would plead guilty and his sentence range would be 8-14 months under the Sentencing Guidelines, given his criminal history. The plea agreement was conditioned on defendant's waiving his right to appeal the sentence, unless there was an upward revision. Both defendant and his attorney signed the agreement. After Hill mentioned to the court the hastily prepared agreement did not contain a government promise not to oppose a request for the minimum mandatory sentence of 8 months, the prosecutor added to it, in handwriting: "The United States agrees that sentencing at the lower end of the applicable guideline range is appropriate."

At the hearing, the court read the indictment, informed defendant of his jury trial rights, told him the maximum sentence was 10 years plus 3 years' supervised release, and asked defendant if he had any questions. Defendant responded he had no questions, he wished to plead guilty, and his plea was voluntary. The court noted the government

agreed to sentencing at the lower end of the guideline range and said it was "appropriate." Whereupon Mr. Chinagorom said "God bless you," and the court added, "And that's what will be utilized." The court did not explain to defendant that if it did not accept the government's sentencing recommendation, defendant could not withdraw the plea.

Mr. Chinagorom then stated in his own words the factual basis for the charge. The court accepted the plea, and said it would hold a sentencing hearing in 49 days or on the last day of the 8-month period. The court ordered an expedited pre-sentence report (PSR) from the probation office.

The PSR calculated an offense level of 10, a criminal history category of II, and a guideline range of 8-14 months, and stated no supervised release term was required when the sentence was less than a year. The sentencing hearing was held on May 5, 1997, at which point defendant had been in custody for 8 months and 7 days. The court sentenced him to time served, plus 3 years' supervised release, and ordered him released from the custody of the United States Marshal.

After sentencing, defendant was taken into custody by the INS. He then prepared a notice of appeal and a pro se motion to withdraw his guilty plea on grounds his attorney had coerced the plea and reneged on his promise that Mr. Chinagorom could suffer no immigration consequences as a result of the plea. The district court denied the motion,

holding defendant could only challenge his plea on appeal or through a motion under 28 U.S.C. § 2255 and no manifest injustice was apparent. Defendant appealed.

In this court, with new counsel, defendant argues the district court promised to sentence him to 8 months and broke that promise when it sentenced him to 8 months plus 7 days and 3 years' supervised release. The government contends we cannot even reach the question because defendant waived his rights to appeal.

At this juncture, we need not probe the briar patch of waiver into which the government would lead us simply because Mr. Chinagorom's basic premise is absurd. The district court did not enter *any* agreement with him, let alone one which promised him a specific term of confinement. The plea agreement was between the defendant and the government, and, consequently, it could not have been "breached" by the court. Moreover, because the government did not sentence defendant, it did not breach its agreement either.

Mr. Chinagorom next argues the district court violated Fed. R. Crim. P. 11(e)(2) by failing to advise him he had no right to withdraw his guilty plea if the court rejected the government's sentencing recommendation. We exercise de novo review over the district court's compliance with Fed. R. Crim. P. 11. This includes any analysis of harmless error. *United States v. Vaughn*, 7 F.3d 1533, 1535 (10th Cir. 1993). Our review leads us to conclude defendant's contention lacks merit.

The rule provides:

> If a plea agreement has been reached by the parties … [and is] the type specified in subdivision (e)(1)(A) or (C), the court may accept or reject the agreement, or may defer its decision … until there has been an opportunity to consider the presentence report. ***If the agreement is of the type specified in (e)(1)(B)***, the court shall advise the defendant if the court does not accept the recommendation or request the defendant nevertheless had no right to withdraw the plea.

Fed. R. Crim. P. 11(e)(2) (emphasis added). Mr. Chinagorom's plea agreement stated, "[t]he defendant and the United States agree pursuant to Fed. R. Crim. P. ***11(e)(1)(C)***, that the defendant's Sentencing Guidelines Offense Level is ten (10) and the defendant's Criminal History Category will be determined after the presentence investigation and report." (emphasis added). It is painfully obvious the plea was not the type subject to the requirement the court advise the defendant he had no right to withdraw the plea.

Undeterred, in his Reply Brief defendant persists, "contrary to the government's apparent argument under this point, a single plea may contain both sentence-related promises described under [Fed. R. Crim. P.] 11(e)(1)(C) and sentence-related promises described under [Fed. R. Crim. P.] 11(e)(1)(B)." But he offers no authority, nor even a creative interpretation of the plea agreement, to show it contains a type (B) promise. The plain terms of the plea agreement prevail, and the district court did not err.

Defendant argues the district court erred by failing to inquire if he understood the "immigration custody consequences of his plea." This issue was not preserved in the

district court. When no objection is made to an action of the district court, we review for plain error. *United States v. Rogers*, 960 F.2d 1501, 1513 (10th Cir. 1992). Defendant argues his plea was induced by his attorney's promise to make arrangements for the payment of his INS bond. The district court, he contends, should have realized this inducement because defendant made statements indicating his concerns about the bond.

At the beginning of the sentencing hearing, the court asked defendant if he had an opportunity to discuss everything with his attorney. Defendant responded, "No, Your Honor …. There are a few things that I would like to discuss with him." Hill disagreed: "We had an agreement initially … where he was going to get credit for the time served. We just need to sentence him. I don't think what he's talking about has anything to do with the sentencing." The court granted a recess for Hill and defendant to talk. Mr. Chinagorom then informed the court:

> I just don't want to be taken to immigration in El Paso and abandoned ....
> One thing he mentioned is that he's going to take care of the immigration
> bond not to require me, when I get to immigration, to say, "Oh, well, you
> come up with the money." He has agreed to take care of it.

Defendant also said he would notify the court if Hill broke the promise to pay his bond. The court did not respond, and moved on to sentencing. Based on his "expression of a serious fear Mr. Hill would renege on that agreement," defendant maintains the district court should have taken steps to ensure he understood the immigration consequences of his plea.

It is obvious defendant knew he was going from the sentencing to INS. His attorney stated, in his presence, "once he is sentenced on this case, he'll be through with this case. They're going to release him to immigration." With respect to the bond, his attorney stated, "I can't make him understand that he needs to finish this case in order to be released to the immigration detainer." No one in the courtroom, including defendant ever gave an indication he thought he would walk out of the courthouse a free man after sentencing. The argument is absurd.

**AFFIRMED**.

ENTERED FOR THE COURT

John C. Porfilio
Circuit Judge